[No. F031900. Fifth Dist. Jan. 10, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
MARIO LARA, Defendant and Appellant.

COUNSEL

Elaine Forrester, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, W. Scott Thorpe and Laura Wetzel Simpton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HARRIS, J.—**

### FACTUAL BACKGROUND

Appellant Mario Lara was charged and convicted of first degree burglary and sentenced to the third strike term of 25 years to life, with an additional 11 years for prior serious felonies and prior prison term enhancements.

Appellant hired privately retained counsel, David Roberts, to represent him throughout the criminal proceedings. Appellant's trial was delayed over one and one-half years. On the day the trial was scheduled to begin, appellant requested to discharge his attorney. However, the trial court mistakenly treated appellant's request as a motion to discharge his court-appointed attorney, pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], and denied appellant's motion. On appeal, appellant contends he was entitled to discharge his privately retained counsel without complying with the factors required by *Marsden*, and the trial court's erroneous treatment of his motion resulted in the violation of his Sixth Amendment right to counsel.

We will find the trial court improperly treated appellant's request to discharge his privately retained counsel as a *Marsden* motion and will reverse appellant's conviction.

*The crime*

We begin with a brief summary of the evidence presented at trial. On the morning of December 31, 1996, two men entered the open garage of the residence of Mr. T. and his family. Mr. T.'s daughters observed the suspects' vehicle parked in the driveway adjoining the garage and watched the suspects walk out of the garage with a toolbox. When the suspects saw Mr. T.'s daughters, they dropped the toolbox, ran to their car and drove away. Mr. T. ran outside, jumped into his own car, and chased the suspects through the neighborhood. The suspects subsequently abandoned the vehicle and escaped on foot. One of the suspects, Michael Woodley, was immediately apprehended a few blocks away, but the second suspect escaped. Woodley was arrested for the burglary, and he immediately implicated appellant Mario Lara as the second suspect. Woodley stated they committed the burglary to finance their drug addiction. Mr. T. and his daughter later identified appellant from a photographic lineup as the second suspect. As it turned out, appellant was already in custody because he had turned himself in on or about January 1, 1997, for violating parole on an unrelated matter.

At trial, Mr. T. and his daughter were unable to identify appellant as the second suspect, but confirmed they had earlier identified an individual from the photographic lineup and they were sure about their identification at that time. Appellant presented an alibi defense and testified he spent the day with his brother and some friends. Appellant also explained that he used to be friends with Michael Woodley but they became enemies after Woodley fathered a child with appellant's sister and abandoned them. Appellant had not spoken with Woodley for several months but believed his nephew was

still friendly with Woodley. Appellant testified his nephew told Woodley that appellant intended to turn himself in after New Year's Eve because he failed a drug test and violated parole, and he believed Woodley blamed him for the burglary because they were enemies.

*The procedural history and continuances*

We now turn to the lengthy procedural history of this case. On or about January 7, 1997, a criminal complaint was filed charging appellant with the instant burglary. Appellant was already in custody in the Fresno County detention facility for the unrelated parole violation. According to appellant, he was not arraigned on the complaint until August 1997, and the preliminary hearing was set for September 1997. Also according to appellant, the complaint was dismissed in September 1997 on the motion of the district attorney, and appellant was discharged and released from custody.

On or about October 15, 1997, a new complaint was filed against appellant charging him with first degree burglary in the instant matter. (Pen. Code, §§ 459 & 460.) In November 1997, appellant was arrested and arraigned on the new complaint and remained in custody for the remainder of the proceedings. The preliminary hearing was set for December 1997, but it was continued.

On January 8, 1998, the preliminary hearing was held. Appellant was represented by retained counsel, David Roberts, who represented him throughout the pretrial proceedings. Appellant was held to answer on the complaint.

On January 22, 1998, the instant information was filed in superior court charging appellant with first degree burglary. The information further alleged appellant had suffered two prior serious felony convictions (Pen. Code § 667, subd. (a)), two prior serious and/or violent felony convictions within the meaning of the three strikes law, and had served one prior prison term pursuant to Penal Code section 667.5, subdivision (b).

On January 23, 1998, appellant pleaded not guilty. Appellant's trial was set for March 19, 1998, and appellant entered a general time waiver.

On March 19, 1998, the case was called for trial assignment, and the matter was continued to March 23. On that day, both the prosecutor and defense counsel moved to continue because of their conflicting trial schedules, and stated they needed more time for preparation. The court continued the matter to April 27, 1998.

On April 27, 1998, the case was again called for trial assignment. The prosecutor requested another continuance because of the difficulty of securing the attendance of Mr. T. and his family who had moved out of the state. Defense counsel agreed to the continuance, and the court reset the matter for June 1, 1998.

On June 1, 1998, the case was called for trial assignment. Both sides advised the court of their agreement to again continue the matter because the prosecution witnesses were not available, and defense counsel had a calendar conflict. The court reset the matter to July 1998.

On July 6, 1998, the matter was continued to July 20, and appellant entered a general time waiver. On July 20, 1998, the matter was continued to August 3, 1998.

*The Marsden hearing*

The instant dispute arises from a hearing held on August 3, 1998, when appellant's case was finally assigned for trial. As soon as the court convened the proceedings, Mr. Roberts, his privately retained counsel, immediately informed the court that appellant "has indicated, I don't know if he still feels of that mind, he has indicated something to say to the Court about some conflicts that he and I have had just recently." The prosecutor offered to leave the courtroom, but the court asked her to wait because "I am not sure it is a Marsden motion yet." Mr. Roberts continued: "I don't think [appellant] knows the name, but I have a feeling that is probably what it is."

The court asked appellant if he had "some question that you want the Court to respond to with regard to a disagreement between you and Mr. Roberts?" Appellant replied he did, and the court cleared the courtroom.

Thereafter, the court conducted a closed hearing and invited appellant to speak. Appellant stated he did not feel that Mr. Roberts was "prepared with the witnesses or anything in the case. I haven't even talked to him before now. Until I came in." The court asked whether they disagreed about witnesses. Appellant replied, "I haven't even been able to confer with him until right now. And then he started running everything down to me and I'm lost." Appellant further stated he did not know what to do, and there were some things "I think should happen and he doesn't agree with, . . ."

The court stated it was not sure about appellant's complaints, and asked whether they disagreed about "a matter of tactics" regarding which witnesses

to call. Appellant replied he disagreed with some things which Mr. Roberts told him. Appellant also disagreed about "some other things about the witnesses and stuff. I haven't seen—talked about this case at all for eight months. And now everything in one day is coming on top of me."

The court asked Mr. Roberts to respond. Mr. Roberts stated they disagreed about calling Michael Woodley, appellant's accomplice, as a witness. Mr. Roberts felt Woodley should not be called by the defense, but appellant strongly disagreed. They had also discussed whether appellant should testify, and "that is something I think we can eventually resolve, initially that created problems, too. I am just having difficulty because, how do I say it? Trying to explain some of the realities of the case are difficult when we are not thinking on the same level. I mean we are not thinking about the same thing. He is thinking about what he is going to say, and I'm trying to explain to him what evidence I anticipate and what decisions I am going to have to make and why I don't want to make those decisions. I am not getting across to him very well and it is upsetting him. I think the only real heavy disagreement we have is over Michael Woodley." While Woodley's initial statement had implicated appellant, Mr. Roberts believed Woodley was "going to take the stand and tell the truth and exculpate [appellant]." Mr. Roberts further believed there would be a "real problem" for Woodley to withstand the prosecution's impeachment of his testimony with his prior statement. Mr. Roberts did not want to call Woodley as a defense witness "because I am feared that he would be uncontrollable and it's scary and so that's my reaction. Of course I haven't talked to him and so that's what [appellant] points out. But then I don't know even now how to get a hold of him." The court replied that such considerations were tactical decisions, and there was still time for Mr. Roberts to subpoena and interview Woodley because they still had to select the jury.

Mr. Roberts also mentioned "just one little problem" involving his trial preparation: "The victim and witnesses in this case have been—how should I say. We've been deprived of locating information because of their interests. And I have cooperated without trying to move to produce it mostly because they're out-of-state and I couldn't afford to go back there anyhow. But I am supposed to have arrangements to be in touch with them before this trial proceeds so I would have at least an opportunity to interview the two little girls, which I haven't had a chance to see. That was the understanding. So in terms of timing, it is going to be a little difficult." The court believed Mr. T. and the children were arriving in Fresno that night. Mr. Roberts was

not sure if the older daughter was also coming because "[s]he is supposed to be here. That was the promise that was made to me."[1]

The court informed appellant that a lot of information had been presented to him, and it was obviously very overwhelming in light of his possible third strike term. The court believed that most of the conflicts between appellant and Mr. Roberts had been resolved except for the decision to call Michael Woodley. The court noted that Woodley had already implicated appellant, it was really a tactical decision about whether Woodley would help or harm the defense, and appellant could talk it over with Mr. Roberts. The court found the conflict was a "tactical difference and doesn't rise to the level in the type of breakdown in the attorney/client relationship that Marsden is looking at. And, therefore, at the present time I am going to deny your request in the Marsden and, . . . what I would encourage you to do is Mr. Roberts is a very hard-working good lawyer. . . . He has been doing this for a lot of years. And I think as the trial progresses you are going to see him working very diligently on your case and communicating with you and bringing you into the decisions that are going to impact this trial." The court promised to ensure that appellant could communicate with Mr. Roberts at all times while he was in custody during the trial, "so that as you devise your defense and consider tactical decisions, you can do that with the maximum amount of communication that we can provide you, . . ." Thereafter, the court invited the prosecutor to return to the courtroom and stated that appellant's *Marsden* motion had been denied.

The court considered the parties' motions in limine and commenced jury selection. Mr. Roberts represented appellant throughout trial without complaint or objection by appellant.

On August 11, 1998, appellant was convicted of first degree burglary, and admitted the special allegations.

On or about September 10, 1998, appellant filed a motion for continuance of his sentencing hearing. The motion asserted appellant had lost "faith and confidence" in Mr. Roberts and intended to retain Colin Kooyumjian to represent him in the rest of the proceedings.

On September 11, 1998, the sentencing hearing was scheduled to be held. Appellant appeared with both Mr. Roberts and Mr. Kooyumjian. The court noted Mr. Roberts had been asked to be relieved as counsel, and that Mr. Kooyumjian requested to be substituted in as retained counsel. The court

---

[1]Mr. Roberts's statements refer to the fact that Mr. T. and his family had moved out of state in connection with Mr. T.'s unrelated placement in the witness protection program.

granted the request and relieved Mr. Roberts. The court also granted appellant's motion for a continuance of the sentencing hearing.

Thereafter, appellant filed a motion for new trial based on Mr. Roberts's alleged ineffective assistance during trial, his failure to interview witnesses and conduct an investigation, his failure to call additional witnesses who would have supported his alibi defense, and his failure to pursue the suggestiveness of the photographic lineup. Appellant did not raise any issues concerning his earlier conflicts with Mr. Roberts or the *Marsden* hearing conducted by the court.

On October 9, 1998, the court denied appellant's motion for new trial. The court also denied appellant's motion to dismiss the strike convictions, even though the court was troubled that Michael Woodley had received a "very light sentence" in comparison to the prosecution's recommendation for appellant to receive a third strike sentence.[2] The court sentenced appellant to the third strike term of 25 years to life for burglary, with two consecutive five-year terms for the prior serious felony enhancements, and a consecutive one-year term for the prior prison term enhancement, for an aggregate term of 36 years to life.

## DISCUSSION

### APPELLANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL

Appellant contends his pretrial complaints about Mr. Roberts constituted a request to discharge his retained defense counsel and hire a new attorney. Appellant asserts the trial court erroneously handled such a request by treating it as a *Marsden* motion. Appellant notes a *Marsden* hearing was not required because Mr. Roberts was retained rather than appointed counsel. Appellant contends he had an absolute right to discharge his appointed counsel, and the court's failure to grant his request requires reversal of his conviction because the court's decision was not based on the appropriate grounds.

■ A criminal defendant is entitled to assistance of counsel at all critical stages of the proceeding. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; Pen. Code, §§ 686, 859 & 987; *Gideon v. Wainwright* (1963) 372 U.S. 335, 344-345 [83 S.Ct. 792, 796-797, 9 L.Ed.2d 799, 93 A.L.R.2d 733].) "The right of a criminal defendant to counsel and to present a defense are among the most sacred and sensitive of our constitutional rights. (*Magee* v. *Superior*

---

[2]Michael Woodley pleaded guilty to burglary and had been sentenced to a determinate term in state prison. He was out of custody at the time of appellant's trial.

*Court* (1973) 8 Cal.3d 949, 954 [106 Cal.Rptr. 647, 506 P.2d 1023].)" (*People v. Ortiz* (1990) 51 Cal.3d 975, 982 [275 Cal.Rptr. 191, 800 P.2d 547].)

The court is under an absolute duty to appoint counsel to represent an indigent defendant. (*Gideon v. Wainwright, supra*, 372 U.S. 335; *People v. Marsden, supra*, 2 Cal.3d at p. 123; *People v. Stevens* (1984) 156 Cal.App.3d 1119, 1127 [203 Cal.Rptr. 505].) However, " '[a] defendant's right to a court-appointed counsel does not include the right to require the court to appoint more than one counsel, except in a situation where the record clearly shows that the first appointed counsel is not adequately representing the accused. . . .' " (*People v. Marsden, supra*, 2 Cal.3d at p. 123, quoting *People v. Mitchell* (1960) 185 Cal.App.2d 507, 512 [8 Cal.Rptr. 319].)

█ An indigent defendant "may be entitled to an order substituting appointed counsel if he shows that, in its absence, his Sixth Amendment right to the assistance of counsel would be denied or substantially impaired." (*People v. Berryman* (1993) 6 Cal.4th 1048, 1070 [25 Cal.Rptr.2d 867, 864 P.2d 40], overruled on other grounds in *People v. Hill* (1998) 17 Cal.4th 800, 823, fn. 1 [72 Cal.Rptr.2d 656, 952 P.2d 673].) The defendant must demonstrate either that his appointed defense counsel is providing inadequate representation, or that he is embroiled in an irreconcilable conflict with defense counsel. (*People v. Marsden, supra*, 2 Cal.3d at pp. 124-125; *People v. Ortiz, supra*, 51 Cal.3d at p. 984.)

*People v. Marsden, supra*, 2 Cal.3d 118, mandates a court hearing to determine whether a defendant's appointed counsel offers constitutionally inadequate representation when defendant requests substitution of appointed counsel. █ The legal principles governing a *Marsden* motion are well settled. " 'When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] A defendant is entitled to relief if the record clearly shows that the first appointed attorney is not providing adequate representation [citation] or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result [citations].' (*People v. Crandell* (1988) 46 Cal.3d 833, 854 [251 Cal.Rptr. 227, 760 P.2d 423]; see also *People v. Marsden*[, *supra*,] 2 Cal.3d 118, 124-125. . . .)" (*People v. Fierro* (1991) 1 Cal.4th 173, 204 [3 Cal.Rptr.2d 426, 821 P.2d 1302]; *People v. Hart* (1999) 20 Cal.4th 546, 603 [85 Cal.Rptr.2d 132, 976 P.2d 683].)

The trial court is not obliged to initiate a *Marsden* inquiry sua sponte. (*People v. Leonard* (2000) 78 Cal.App.4th 776, 787 [93 Cal.Rptr.2d 180].)

The court's duty to conduct the inquiry arises "only when the defendant asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel." (*People v. Molina* (1977) 74 Cal.App.3d 544, 549 [141 Cal.Rptr. 533]; *People v. Leonard, supra,* 78 Cal.App.4th at p. 787.) The defendant is not entitled to claim that an irreconcilable conflict has arisen merely because of a disagreement with counsel over reasonable tactical decisions. (*People v. Memro* (1995) 11 Cal.4th 786, 858 [47 Cal.Rptr.2d 219, 905 P.2d 1305]; *People v. Douglas* (1990) 50 Cal.3d 468, 520 [268 Cal.Rptr. 126, 788 P.2d 640], disapproved on other grounds in *People v. Marshall* (1990) 50 Cal.3d 907, 933, fn. 4 [269 Cal.Rptr. 269, 790 P.2d 676].) "A trial court is not required to conclude that an *irreconcilable* conflict exists if the defendant has not made a sustained good faith effort to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness." (*People v. Crandell, supra,* 46 Cal.3d at p. 860.)

██ A defendant who makes a *Marsden* motion must show good cause for replacing appointed counsel because a defendant's right to appointed counsel does not include the right to demand appointment of more than one counsel. (*People v. Ortiz, supra,* 51 Cal.3d at p. 980.) Substitution of appointed counsel threatens to waste public resources by creating "duplicative representation and repetitive investigation at taxpayer expense." (*People v. Ortiz, supra,* 51 Cal.3d at p. 986.) Free substitution as a matter of right would present an "undesirable opportunity to 'delay trials and otherwise embarrass effective prosecution' of crime." (*Ibid.,* quoting *People v. Williams* (1970) 2 Cal.3d 894, 906 [88 Cal.Rptr. 208, 471 P.2d 1008].) Denial of substitution presumably will not deprive the defendant of effective counsel, because he or she "will continue to be represented by an attorney at public expense." (*People v. Ortiz, supra,* 51 Cal.3d at p. 986; *People v. Turner* (1992) 7 Cal.App.4th 913, 917-918 [9 Cal.Rptr.2d 388].)

██ "[T]he right to the discharge or substitution of court-appointed counsel is not absolute, and is a matter of judicial discretion unless there is a sufficient showing that the defendant's right to the assistance of counsel would be substantially impaired if his request was denied." (*People v. Carr* (1972) 8 Cal.3d 287, 299 [104 Cal.Rptr. 705, 502 P.2d 513]; *People v. Clark* (1992) 3 Cal.4th 41, 104 [10 Cal.Rptr.2d 554, 833 P.2d 561]; *People v. Hart, supra,* 20 Cal.4th at p. 603.) The trial court also retains discretion to deny a *Marsden* motion as untimely. (*People v. Whitt* (1990) 51 Cal.3d 620, 659 [274 Cal.Rptr. 252, 798 P.2d 849]; *People v. Jackson* (1981) 121 Cal.App.3d 862, 872 [176 Cal.Rptr. 166].) On appeal, we review a trial court's decision denying a *Marsden* motion to relieve appointed counsel under the deferential

abuse of discretion standard. (*People v. Berryman, supra,* 6 Cal.4th at p. 1070; *People v. Earp* (1999) 20 Cal.4th 826, 876 [85 Cal.Rptr.2d 857, 978 P.2d 15].)

*Retained counsel and Ortiz*

■ A criminal defendant also has the due process right to appear and defend with retained counsel of his or her choice. (*People v. Leonard, supra,* 78 Cal.App.4th at p. 784; *People v. Stevens, supra,* 156 Cal.App.3d at p. 1127.) "While we have recognized competing values of substantial importance to trial courts, including the speedy determination of criminal charges, the state should keep to a 'necessary minimum its interference with the individual's desire to defend himself in whatever manner he deems best, using any legitimate means within his resources' [citation]. A criminal defendant's right to decide how to defend himself should be respected unless it will result in 'significant prejudice' to the defendant or in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' [Citation.] In other words, we demand of trial courts a 'resourceful diligence directed toward the protection of [the right to counsel] to the fullest extent consistent with effective judicial administration.' [Citation.]" (*People v. Ortiz, supra,* 51 Cal.3d at pp. 982-983.)

In contrast to situations involving appointed counsel, a defendant may discharge his retained counsel of choice at any time with or without cause. (*People v. Ortiz, supra,* 51 Cal.3d at p. 983.) "The right of a nonindigent criminal defendant to discharge his retained attorney, with or without cause, has long been recognized in this state [citations], and is governed by Code of Civil Procedure section 284, subdivision 2 [citations]. The right to discharge retained counsel is based on ' "necessity in view both of the delicate and confidential nature of the relation between [attorney and client], and of the evil engendered by friction or distrust." ' [Citation.] In order to ensure effective assistance of counsel, a nonindigent defendant is accorded the right to discharge his retained attorney: 'the attorney-client relationship . . . involves not just the casual assistance of a member of the bar, but an intimate process of consultation and planning which culminates in a state of trust and confidence between the client and his attorney. This is particularly essential, of course, when the attorney is defending the client's life or liberty.' [Citation.] Thus, we conclude that the right to counsel of choice reflects not only a defendant's choice of a particular attorney, but also his decision to discharge an attorney whom he hired but no longer wishes to retain." (*Ibid.,* fn. omitted.) A defendant has a constitutional and statutory right to counsel of his choice, and his interest in discharging a retained attorney is included within the right to counsel of one's choice. (*People v. Stevens, supra,* 156 Cal.App.3d at p. 1127.)

The right to discharge retained counsel is not absolute, however, and the court may exercise discretion to ensure orderly and expeditious judicial administration if the defendant is "unjustifiably dilatory or . . . arbitrarily desires to substitute counsel at the time of trial." (*People v. Blake* (1980) 105 Cal.App.3d 619, 623-624 [164 Cal.Rptr. 480]; *People v. Leonard, supra*, 78 Cal.App.4th at p. 784.)

In *People v. Ortiz, supra*, 51 Cal.3d 975, the court held a nonindigent defendant was not required to satisfy the requirements of *Marsden* if he wished to discharge his retained counsel of choice. *Ortiz* held the defendant's right to discharge his retained counsel was not absolute, and the trial court retained discretion to deny such a motion if the discharge (1) would cause " 'significant prejudice' " to the defendant, e.g., by forcing him to trial without adequate representation, or (2) was untimely and would result in a " 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' " (*People v. Ortiz, supra*, 51 Cal.3d at p. 982, quoting *People v. Crovedi* (1966) 65 Cal.2d 199, 208 [53 Cal.Rptr. 284, 417 P.2d 868]; *People v. Turner, supra*, 7 Cal.App.4th at p. 918.) "[T]he 'fair opportunity' to secure counsel of choice provided by the Sixth Amendment 'is necessarily [limited by] the countervailing state interest against which the sixth amendment right provides explicit protection: the interest in proceeding with prosecutions on an orderly and expeditious basis, taking into account the practical difficulties of "assembling the witnesses, lawyers, and jurors at the same place at the same time." ' The trial court, however, must exercise its discretion reasonably: 'a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.' " (*People v. Ortiz, supra*, 51 Cal.3d at pp. 983-984.)

Of course, the defendant's right to effective counsel need not always yield to judicial efficiency; courts must demonstrate a " 'resourceful diligence directed toward the protection of [the right to counsel] to the fullest extent consistent with effective judicial administration.' " (*People v. Ortiz, supra*, 51 Cal.3d at pp. 982-983, quoting *People v. Crovedi, supra*, 65 Cal.2d at p. 209; *People v. Turner, supra*, 7 Cal.App.4th at p. 919.) A court faced with a request to substitute retained counsel must balance the defendant's interest in new counsel against the disruption, if any, flowing from the substitution. (*People v. Lau* (1986) 177 Cal.App.3d 473, 479 [223 Cal.Rptr. 48]; *People v. Turner, supra*, 7 Cal.App.4th at p. 919.) "While we do require an *indigent* criminal defendant who is seeking to substitute one *appointed* attorney for another to demonstrate either that the first appointed attorney is providing inadequate representation [citations], or that he and the attorney are embroiled in irreconcilable conflict [citation], we have never required a *nonindigent* criminal defendant to make such a showing in order to discharge his *retained* counsel." (*People v. Ortiz, supra*, 51 Cal.3d at p. 984.)

The court must not consider whether the defendant is indigent and will require appointment of counsel in ruling on his timely motion to discharge retained counsel. (*People v. Ortiz, supra*, 51 Cal.3d at p. 987.) "To conclude otherwise would be to ignore the value we place on allowing defendants to defend themselves as they deem best, absent prejudice to themselves or unreasonable delay in the processes of justice. . . . [T]here is no interest compelling us to treat an indigent defendant any differently from a nonindigent defendant when he moves to discharge his retained counsel. In light of the importance of the right to counsel of choice and the sensitive nature of the relationship between a criminal defendant and his lawyer, we must not allow a defendant's indigence to prevent him from discharging in a timely manner the retained counsel he no longer wishes to represent him." (*Ibid.*) *Ortiz* concluded the reasons supporting the right of a nonindigent criminal defendant to discharge his retained counsel "favor extension of that right to all criminal defendants, regardless of their economic status." (*Id.* at p. 984.)

As set forth above, the trial court's denial of a defendant's *Marsden* motion is reviewed pursuant to the deferential abuse of discretion standard. (*People v. Berryman, supra*, 6 Cal.4th at p. 1070; *People v. Earp, supra*, 20 Cal.4th at p. 876.) ■ In contrast, reversal is automatic when a defendant has been deprived of his right to discharge retained counsel and defend with counsel of his choice. (*People v. Ortiz, supra*, 51 Cal.3d at p. 988.) "The right to counsel of choice is one of the constitutional rights most basic to a fair trial. Accordingly, it is clear that a criminal defendant need not demonstrate prejudice resulting from a violation of that right in order to have his conviction reversed." (*Ibid.*) "Just as when a court improperly denies a defendant's motion to represent himself [citation] or to replace counsel because of a conflict of interest [citation], or when an indigent criminal defendant is denied counsel altogether [citation], we must presume prejudice when an indigent criminal defendant is forced to proceed with a retained attorney whom he has consistently, and in a timely manner, sought to discharge in favor of the public defender or other court-appointed counsel. We must not speculate as to the prejudicial effect of ' "injecting an undesired attorney into the proceedings" ' [citation], especially when . . . the defendant has repeatedly alleged inadequate assistance." (*People v. Ortiz, supra*, 51 Cal.3d at p. 988.) Any standard short of per se reversal would " 'inevitably erode the right itself' [citation], by relegating appellate review of a constitutional right to mere speculation. . . . [T]o assess ' "why or how an accused's trial was disadvantaged by injecting an undesired attorney into the proceedings would require an impossibly speculative comparison" ' of the performance of the counsel whom the court refused to discharge with the unrealized performance of an appointed attorney." (*Ibid.*) *Ortiz* concluded the improper denial of a defendant's right to discharge retained counsel was

akin to violation of other " 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error. . . .' " (*Ibid.,* quoting *Chapman v. California* (1967) 386 U.S. 18, 23 [87 S.Ct. 824, 827-828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].)

*The trial court incorrectly relied on Marsden*

With these standards in mind, we turn to appellant's assignments of error. If Mr. Roberts had been appointed by the court to represent appellant, the trial court's reliance on *Marsden* to resolve this matter would have been appropriate. The disagreement between appellant and Mr. Roberts apparently involved counsel's choice of trial tactics, and there was no evidence of an irreconcilable conflict which might have supported relieving Mr. Roberts and appointing a new attorney to represent appellant. On such a record, it could not have been said the trial court abused its discretion in denying a *Marsden* motion.

▮ However, Mr. Roberts was not appointed by the court to represent appellant. Appellant hired Mr. Roberts to be his privately retained defense counsel of choice. As such, a *Marsden* motion was the inappropriate vehicle in which to consider appellant's complaints against his retained counsel, and appellant had an absolute right to discharge Mr. Roberts and hire a new attorney. (*People v. Ortiz, supra,* 51 Cal.3d at pp. 982-984.) It is not clear whether the court mistakenly believed that Mr. Roberts was appellant's court-appointed counsel, or that a *Marsden* motion was the appropriate vehicle to consider appellant's complaints against his retained counsel. In any event, appellant was not required to meet the onerous *Marsden* factors and establish an irreconcilable conflict to discharge his privately retained defense counsel.

The trial court's improper reliance on *Marsden*, however, does not mean that appellant is entitled to the automatic reversal of his conviction. *Ortiz* held that the defendant's right to discharge his retained counsel is not absolute, and the trial court retains discretion to deny such a motion if the discharge (1) would cause " 'significant prejudice' " to the defendant, e.g., by forcing him to trial without adequate representation, or (2) is untimely and would "result in . . . 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.' " (*People v. Ortiz, supra,* 51 Cal.3d at p. 982, quoting *People v. Crovedi, supra,* 65 Cal.2d at p. 208; *People v. Turner, supra,* 7 Cal.App.4th at p. 918.) If such factors are not implicated in defendant's motion to discharge his retained counsel, the trial court's denial of defendant's motion requires automatic reversal of the conviction. (*People v. Ortiz, supra,* 51 Cal.3d at p. 988.)

The questions thus posed by the instant case are (1) whether appellant actually requested to discharge his retained counsel, and, if so, (2) whether the court's ruling on the supposed *Marsden* motion effectively addressed the issues it should have considered in the course of an *Ortiz* motion regarding retained counsel.

### Did appellant request to discharge his retained attorney?

Appellant asserts he sought to discharge Mr. Roberts on the scheduled first day of trial. Appellant concedes his request was not a "model of specificity," but contends the nature of his complaints reflected that he no longer trusted Mr. Roberts's ability to represent him. Appellant also notes the trial court interpreted his comments as a request to discharge his attorney, even though the court incorrectly conducted a *Marsden*-type inquiry.

Respondent concedes that a *Marsden*-type hearing was inappropriate because Mr. Roberts was appellant's privately retained counsel of choice. However, respondent contends appellant never requested to discharge his retained counsel, but merely expressed his disagreements with Mr. Roberts about tactical matters. Respondent also argues that even if Mr. Roberts had been appellant's appointed counsel, appellant's complaints were insufficient to support a *Marsden* hearing because there was no evidence of an irreconcilable conflict. Respondent thus contends the constitutional principles set forth in *Ortiz* were never implicated in this case because appellant merely expressed his differences with Mr. Roberts and never wanted to discharge him.

In *People v. Lucky* (1988) 45 Cal.3d 259 [247 Cal.Rptr. 1, 753 P.2d 1052], the defendant was represented by a court-appointed attorney, Mr. Shaw, in a special circumstances prosecution. Prior to jury selection, Mr. Shaw informed the court that the defendant was trying to hire a private attorney, and stated there was a difference of opinion between them with regard to trial tactics. The court granted a continuance for the defendant to explore the possibility of retaining new counsel. Two days later, Mr. Shaw informed the court that the defendant would not be hiring a new attorney. Mr. Shaw also explained their disagreement involved whether to present a psychological defense and discuss the defendant's history of drug abuse. The court asked the defendant: " '[H]ave you got any problems with Mr. Shaw handling this, other than you think the case should be handled one way or the other?' " The defendant replied, " 'That's about all, Your Honor.' " The court then asked the defendant whether he had any complaints about starting trial in five days, and defendant replied that he did not. The court set the case for trial on the agreed-upon date, and the defendant never raised any further objections or complaints about his attorney. (*Id.* at pp. 280-281.)

*Lucky* rejected the defendant's claim that the court improperly refused to hold a *Marsden* hearing, and held that the defendant never requested to discharge his court-appointed counsel. *Lucky* held that a trial court's duty to permit a defendant to state his reasons for dissatisfaction with his attorney arises "when the defendant in some manner moves to discharge his current counsel. The mere fact that there appears to be a difference of opinion between a defendant and his attorney over trial tactics does not place a court under a duty to hold a *Marsden* hearing." (*People v. Lucky, supra,* 45 Cal.3d at p. 281, fn. omitted.) *Lucky* held that the defendant was not required to make a proper and formal legal motion, "but at least some clear indication . . . that he wants a substitute attorney. The record in this case reveals no such indication by defendant." (*Id.* at p. 281, fn. 8.)

In *Bland v. California Dept. of Corrections* (9th Cir. 1994) 20 F.3d 1469 (*Bland*), the defendant was represented by privately retained counsel, who failed to appear on the morning of the first day of trial. Counsel appeared in the afternoon and explained that he mistakenly believed the defendant had hired another attorney. The court continued the proceedings, but counsel failed to appear at the next hearing. The defendant stated that his attorney still believed he was no longer on the case, but the court noted it had never relieved him as counsel. The court found counsel in contempt and issued a bench warrant. Counsel finally appeared a few days later and stated he made a mistake in placing the trial date on his calendar. The court asked counsel if he was ready for trial, and counsel replied he was trailing another matter and was not ready. Counsel also stated his understanding that the defendant wanted to be represented by another attorney, and requested appointment of the public defender. The court replied that the defendant might want another attorney, *"but that is not going to happen."* (*Id.* at p. 1475.)

*Bland* found that the defendant requested substitute counsel based on the nature of the statements made by his attorney. *Bland* also relied on the trial court's negative response, which suggested "that it was aware of [the defendant's] request because his request was summarily denied. . . . To be sure, the request is not a model of specificity; but, given the circumstances of the case, it was a request which, at the very least, required further inquiry by the court." (*Bland, supra,* 20 F.3d at p. 1475.)

It is a close question as to whether appellant wanted to discharge Mr. Roberts. At the beginning of the proceedings, Mr. Roberts immediately informed the court that appellant had some complaints about his representation. The prosecutor started to leave the courtroom in anticipation of a *Marsden* motion. The court instructed the prosecutor to remain in the courtroom, and asked Mr. Roberts for clarification as to whether appellant

was making a *Marsden* motion. Mr. Roberts stated: "I don't think [appellant] knows the name, but I have a feeling that is probably what it is." The court asked appellant if he had "some question that you want the Court to respond to with regard to a disagreement between you and Mr. Roberts?" Appellant replied he did, and the court cleared the courtroom and conducted the *Marsden* hearing. At the conclusion of the hearing, the court found the conflict between appellant and Mr. Roberts was a "tactical difference and doesn't rise to the level in the type of breakdown in the attorney/client relationship that Marsden is looking at. And, therefore, at the present time I am going to deny your request in the Marsden . . . ."

Respondent relies on *People v. Lucky, supra,* 45 Cal.3d 259, and argues appellant never expressly requested to discharge Mr. Roberts. As in *Bland,* however, the trial court obviously interpreted appellant's complaints as sufficient to raise a *Marsden* motion. As discussed above, the trial court is not obliged to initiate a *Marsden* motion sua sponte. *(People v. Leonard, supra,* 78 Cal.App.4th at p. 787.) The trial court's duty to conduct a *Marsden* inquiry arises "only when the defendant asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel." *(People v. Molina, supra,* 74 Cal.App.3d at p. 549; *People v. Leonard, supra,* 78 Cal.App.4th at p. 787.) The trial court's evaluation of appellant's complaints strongly infers that it was willing to grant the supposed *Marsden* motion and discharge appellant's attorney if the court found an irreconcilable conflict existed between appellant and Mr. Roberts. Instead, the court found appellant and Mr. Roberts merely disagreed about trial tactics, and that such a disagreement was insufficient to support the discharge of appellant's defense counsel. In contrast to *Lucky,* the trial court never asked appellant if he was still willing to proceed to trial despite his disagreements with Mr. Roberts. Such an inquiry would have settled the issue as to whether appellant was still unsatisfied with Mr. Roberts's representation.

While the trial court improperly conducted a *Marsden*-type hearing in this case, we may rely on the court's factual interpretation of the situation as involving a request by appellant to discharge his defense attorney and obtain a new attorney to represent him in this matter. We thus conclude that appellant's complaints about his defense counsel were sufficient to implicate his right to discharge his retained counsel, and either hire a new attorney or request the appointment of counsel.

*Was appellant's request timely?*

 Respondent asserts that even if appellant's complaints are construed as a request to discharge his retained counsel, such a request was not timely.

Respondent acknowledges the court never addressed the *Ortiz* factors, but contends that appellant's request occurred on the scheduled first day of trial, and the court would not have abused its discretion if it had denied an *Ortiz* motion as untimely.

As discussed above, the trial court may deny a defendant's motion to discharge his retained counsel if the motion is untimely and would "result in . . . 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'" (*People v. Ortiz, supra,* 51 Cal.3d at p. 982, quoting *People v. Crovedi, supra,* 65 Cal.2d at p. 208; *People v. Turner, supra,* 7 Cal.App.4th at p. 918.)

In *People v. Stevens, supra,* 156 Cal.App.3d 1119, the defendant was represented by his brother-in-law, who volunteered to represent the defendant without compensation and was not appointed by the court. Two weeks before trial, the defendant requested the court to relieve his brother-in-law and appoint the public defender. Counsel missed two appearances, the defendant had unsuccessfully attempted to contact him for three weeks, and there was evidence counsel had a drinking problem. The trial court conducted a *Marsden* hearing but denied the defendant's motion. The trial court found no legally sufficient reason to relieve counsel and was unwilling to grant a continuance. (*People v. Stevens, supra,* 156 Cal.App.3d at pp. 1125-1126.)

*Stevens* was decided by this court prior to the Supreme Court's ruling in *Ortiz. Stevens* held that the defendant's attorney was not appointed by the court, and was privately retained even though he was not being paid. *Stevens* rejected the trial court's reliance on *Marsden,* and held the *Marsden* analysis did not govern substitution of appointed counsel for retained counsel. (*People v. Stevens, supra,* 156 Cal.App.3d at pp. 1126-1127.) *Stevens* held that "[a]bsent a proper finding of unwarranted disruption of the orderly processes of justice, a court may not force a defendant who timely requests substitution to go to trial represented by counsel he no longer trusts." (*Id.* at p. 1128, fn. omitted.)

*Stevens* found the defendant's request was timely because it was made two weeks before trial was scheduled to begin. (*People v. Stevens, supra,* 156 Cal.App.3d at p. 1128.) The defendant brought his difficulties with counsel to the court's attention at the first hearing in superior court following arraignment. "There is not the slightest indication that [the defendant's] purpose in seeking substitution was a desire to delay the proceedings; no previous requests for continuance had been made. Furthermore, the record shows '[n]o prospect of possibly impairing efficient judicial administration . . . sufficient to overcome [the defendant's] interest' in appointment of a

public defender. [Citation.] As [the defendant] points out, all the prosecution witnesses were law enforcement officers, and the record contains no evidence that a continuance would prevent their appearance. Indeed, the court had discussed the possibility of a continuance [at an earlier hearing], and the prosecutor raised no objection." (156 Cal.App.3d at p. 1129.)

In *People v. Lau, supra,* 177 Cal.App.3d 473 (*Lau*), the defendant and an accomplice were charged with attempted murder and assault. The defendant was represented by privately retained counsel. The defendant's attorney did not appear for the scheduled first day of trial and could not be located. Counsel appeared the next day and explained that he believed a negotiated plea disposition could be reached. Counsel stated a plea agreement was the defendant's best option based on his objective evaluation of the evidence. The prosecutor clarified that any negotiated disposition required a plea agreement by both defendants, and the accomplice refused to plead guilty. The defendant immediately moved to discharge retained counsel and claimed a conflict of interest existed because counsel believed he was guilty. However, counsel assured the court he would defend his client as best he could, and the court agreed the attorney would not have been doing his job if he had not expressed his evaluation of the likelihood of prevailing. The trial court denied the defendant's motion to discharge his retained counsel because there were no legally sufficient reasons supporting the motion, particularly given the late date it was being made. (*Id.* at pp. 477-478.) The court noted the basic problem was the defendant's disagreement with counsel's analysis and evaluation of the case against him, but found that such a difference of opinion did not justify substitution of attorneys, " 'particularly in a two defendant case at this point in time.' " (*Id.* at p. 479.)

*Lau* held the trial court properly denied the defendant's request to discharge his retained counsel. *Lau* noted the defendant's request "was made literally the moment jury selection was to begin. As evidenced by the court's comments . . . , the timeliness, or lack thereof, of the request properly concerned the court." (*Lau, supra,* 177 Cal.App.3d at p. 479.) *Lau* noted that *Stevens* involved a request to discharge counsel made two weeks prior to the start of trial. (177 Cal.App.3d at p. 479.) *Lau* also found the trial court properly evaluated counsel's ability to represent defendant. "Faced with the fact that [the codefendant's attorney] had announced ready to proceed and with the untimeliness of [the defendant's] request, the court nonetheless considered [defendant's] remarks regarding his disagreement with counsel. Counsel admitted being angry with [the defendant], but assured the court he would defend [defendant] to the best of his abilities." (*Ibid.*) *Lau* concluded the trial court properly considered and denied the defendant's request, "especially given its untimeliness." (*Ibid.*)

In *People v. Ortiz, supra,* 51 Cal.3d 975, the defendant's motion to discharge his retained counsel was timely because it was made after a mistrial had been declared, and well before the second trial started. (*Id.* at p. 987.)

In *People v. Turner, supra,* 7 Cal.App.4th 913, the trial court initially appointed the public defender to represent the defendant. The court subsequently granted the defendant's request to appoint an attorney to represent him who was employed by a neighborhood legal clinic. The clinic was funded by federal block grants. The defendant later moved to discharge his attorney. The trial court denied the motion, and found that the defendant's only purpose in bringing the motion was to delay the proceedings. (*Id.* at pp. 915-916.) On appeal, the defendant argued his attorney from the neighborhood legal clinic was not appointed counsel but more akin to retained counsel, and the trial court therefore erred in relying on *Marsden.* The defendant argued he had a presumptive right to replace his attorney under *Ortiz.* (*People v. Turner, supra,* 7 Cal.App.4th at p. 917.)

*Turner* held the nature of defense counsel's employment was the equivalent of appointed counsel for purposes of ascertaining the scope of the defendant's right to substitute counsel. (*People v. Turner, supra,* 7 Cal.App.4th at pp. 917-918.) *Turner* also found the trial court would properly have denied the requested substitution even if counsel had been privately retained, given that the defendant's request occurred on the first day of trial. (*Id.* at p. 919.) "This meant that the request could not be granted without causing a significant disruption, i.e., a continuance with the attendant further inconvenience to witnesses and other participants. The question then became whether such a disruption was reasonable under the circumstances. The trial court properly weighed the considerations relevant to this issue. After allowing defendant to explain his dissatisfaction with [defense counsel], the court found no adequate basis for permitting the disruption of a continuance. Defendant was unable to offer any countervailing consideration, and in particular failed to present any coherent reason for doubting the competence, diligence, motivation, or commitment of his existing counsel. Indeed, the vagueness of his complaints supported the court's apparent finding that the motion was motivated not by any genuine dissatisfaction with counsel but by a desire to delay the trial. [¶] Whatever defendant's subjective intent, the substitution of counsel on the morning of trial would certainly have led to a continuance, and the trial court properly found that such a disruption would be unreasonable under the circumstances." (*Ibid.,* fn. omitted.)

*Bland, supra,* 20 F.3d 1469, also addressed the timeliness of the defendant's motion to discharge retained counsel, who had already been held in

contempt for failing to appear. When counsel ultimately appeared at a continued hearing, the court refused to even consider the defendant's expressed desire to discharge counsel. (*Id.* at pp. 1474-1475.) *Bland* acknowledged the trial court retained discretion to deny a motion to substitute counsel on the eve of trial where substitution would require a continuance. (*Id.* at p. 1476.) However, *Bland* found the defendant's request was timely under the circumstances. The July 30, 1987, trial date had already been continued when the defendant made the motion on August 14, 1987. The motion also preceded the trial court's immediate grant of another continuance, and the trial did not occur until October 1987, after several additional continuances. (*Ibid.*) "[The defendant's] motion came before trial began and [counsel] was not much more prepared than a substitute counsel would have been because, at the time the motion for substitute counsel was made, [counsel] had not yet prepared for trial. After the motion was denied, [counsel] stated that he had not had an opportunity to prepare because he had just received the file the week before. In addition, the trial court did not indicate that it was denying the motion based upon timeliness grounds." (20 F.3d at p. 1476.) *Bland* concluded the record did not support a finding that the defendant's motion was untimely. (*Ibid.*)

Respondent asserts that a motion to discharge retained counsel on the first day of trial was necessarily untimely and would have resulted in prejudicial delay to the prosecution witnesses and disrupted the orderly process of justice. However, the criminal proceedings against appellant had been continued for nearly one and one-half years. The trial court repeatedly granted continuances on the motions of both the prosecutor and defense counsel, and appellant had entered a general time waiver. When the matter was finally assigned for trial, appellant immediately expressed his dissatisfaction with his retained counsel prior to the court's consideration of any other motions or the commencement of jury selection. When the court decided that appellant was making a *Marsden* motion, the prosecutor did not object to the motion as untimely. During the *Marsden* hearing, appellant clearly expressed his frustration with Mr. Roberts's failure to consult with him while he was in custody, despite the lengthy pendency of the criminal proceedings. Mr. Roberts admitted he had not interviewed the witnesses, but the court believed he would have sufficient opportunity to prepare during jury selection. The trial court denied the supposed *Marsden* motion and found appellant and counsel merely disagreed as to tactics. The court did not deny the supposed *Marsden* motion as untimely or make any findings as to timeliness.

While appellant's motion was made on the scheduled first day of trial, there is no evidence to suggest that appellant raised such complaints in an effort to improperly delay the proceedings. The record strongly suggests that

Mr. Roberts had not consulted with appellant during the numerous continuances, and appellant was unaware of the nature of Mr. Roberts's preparation until the moment the trial was finally set to begin. Appellant was faced with the start of a trial in which he faced a possible third strike sentence, and he was clearly upset that counsel did not seem prepared. Under the circumstances, appellant informed the court of his concerns at the first possible opportunity.

Respondent asserts the instant case is similar to *Lau* and *Turner*, and the trial court would have been within its discretion to find appellant's request to discharge retained counsel was untimely. While the law enforcement witnesses were from the Fresno Police Department, the victims had moved out of state by the time of trial and were scheduled to arrive in Fresno on the evening of the first day of trial. The record suggests Mr. T. and his family might have been inconvenienced if they were already en route to Fresno when appellant raised his motion to discharge retained counsel. However, this aspect of the timeliness issue must remain as mere speculation given the trial court's mishandling of this issue. (See *Bland v. California Dept. of Corrections, supra*, 20 F.3d at p. 1477.)

In addition, the prosecutor was aware that the court was conducting a *Marsden* motion, and that the court could have granted the motion, appointed new counsel, and granted a continuance of the trial date. Nevertheless, the prosecutor never objected to the supposed *Marsden* motion as being untimely. The trial court considered the supposed *Marsden* motion on its merits and did not make any findings as to the motion's being untimely. We thus lack any factual findings that appellant's motion was necessarily untimely or that it would have disrupted the orderly process of justice.

A similar situation existed in *Bland v. California Dept. of Corrections, supra*, 20 F.3d 1469. As set forth above, the trial court therein unilaterally denied the defendant's request to discharge retained counsel, and never conducted any type of hearing to determine whether there was an irreconcilable conflict between the defendant and counsel. *Bland* dealt with habeas corpus review of the defendant's conviction, and found such review was " 'hampered because the trial court made absolutely no inquiry into the defendant's request for substitution.' " (*Id.* at p. 1477.) *Bland* noted the trial court may have ultimately concluded that granting the defendant's motion was not required because no irreconcilable conflict existed. "But, absent inquiry on the record, there is no way to determine whether it would have been proper to grant [the defendant's] request." (*Ibid.*)

As in *Bland*, there is no way to determine whether allowing appellant to discharge his retained counsel and granting a continuance would have been

prejudicial to the prosecution and disrupted the orderly process of justice. It can certainly be speculated that it would have been disruptive to cancel the travel plans for Mr. T. and his family and reschedule their trip, but it is equally possible that such a cancellation could have been accomplished with a minimum of disruption since these witnesses had not yet been made available to the defense. We are thus left with an incomplete record upon which to conclude that such a motion was necessarily untimely.

*Invited error*

We are presented with the question of whether the trial court's improper treatment of appellant's complaints as a *Marsden*-type motion requires automatic reversal. As set forth above, the entire problem in this case was created by the trial court's mistaken belief that the instant situation was governed by *Marsden*. As we have previously indicated, it is not clear whether the trial court's ruling was based on the mistaken belief that Mr. Roberts was appointed counsel. But regardless of the court's belief, Mr. Roberts was clearly aware of the nature of his retention and fee arrangement with appellant. Nevertheless, Mr. Roberts did not inform the court that he was privately retained by appellant, or that it was inappropriate to follow *Marsden* in a situation involving retained counsel.

It could be argued that Mr. Roberts's failure to clarify the nature of his representation, or object to the court's reliance on *Marsden*, constitutes invited error. "The doctrine of invited error is designed to prevent an accused from gaining a reversal on appeal because of an error made by the trial court at his behest. If defense counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal." (*People v. Wickersham* (1982) 32 Cal.3d 307, 330 [185 Cal.Rptr. 436, 650 P.2d 311]; *People v. Greenberger* (1997) 58 Cal.App.4th 298, 371 [68 Cal.Rptr.2d 61]; see also *People v. Bunyard* (1988) 45 Cal.3d 1189, 1234-1236 [249 Cal.Rptr. 71, 756 P.2d 795]; *People v. Kirkpatrick* (1994) 7 Cal.4th 988, 1011 [30 Cal.Rptr.2d 818, 874 P.2d 248]; *People v. Clark* (1992) 3 Cal.4th 41, 109 [10 Cal.Rptr.2d 554, 833 P.2d 561]; *People v. Cooper* (1991) 53 Cal.3d 771, 825-833 [281 Cal.Rptr. 90, 809 P.2d 865].)

Even in the context of invited error, however, the trial court rather than defense counsel has the ultimate duty to apply the correct law, and the court's duty can only be negated in that "special situation" in which defense counsel deliberately or expressly, as a matter of trial tactics, caused the error. (*People v. Graham* (1969) 71 Cal.2d 303, 318 [78 Cal.Rptr. 217, 455 P.2d 153].) "In the absence of a clear tactical purpose, the courts and commentators eschew a finding of the 'invited error' that excuses a trial judge from

[performing his or her duty] on material questions of law." (*Id.* at p. 319.) The test for invited error is not whether the appellate court can infer from the record as a whole that failure to object to the error was a deliberate tactical decision. Invited error cannot be found even if counsel's silence was the result of a tactical decision, since the court's duty to apply the correct law is not dependent upon counsel and is not waived by counsel's failure to object to the error. Nor does the issue center on whether counsel subjectively desired a certain result. (*People v. Wickersham, supra*, 32 Cal.3d at pp. 330-335.) Error is invited only if defense counsel affirmatively causes the error and makes "clear that [he] acted for tactical reasons and not out of ignorance or mistake" or forgetfulness. (*Id.* at p. 330.)

 It cannot be said that Mr. Roberts's silence constituted invited error. While Mr. Roberts was certainly aware that he had been retained by appellant rather than appointed by the court, he may have been unaware of the implications of this distinction or that *Marsden* was inapplicable. Mr. Roberts acted under the belief that a *Marsden*-type motion was the appropriate vehicle for the court to evaluate appellant's complaints, and he tried to explain there were no irreconcilable conflicts or breakdowns in communications between them. The trial court's failure to apply the correct law is not excused by Mr. Roberts's own misconduct.[3] Indeed, it would be ludicrous to hold Mr. Roberts's error against appellant, when appellant was trying to discharge him because he was not satisfied with his representation.

*Reversible error*

 Respondent acknowledges the trial court incorrectly applied *Marsden* rather than *Ortiz*, but insists appellant's conviction need not be reversed because the trial court's ruling was otherwise correct in law even though based on an erroneous rationale, given the untimeliness of appellant's supposed motion.

"[W]here fundamental rights are affected by the exercise of discretion by the trial court, . . . such discretion can only be truly exercised if there is no misconception by the trial court as to the legal basis for its action." (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 496 [146 Cal.Rptr. 623, 579 P.2d 514]; *People v. Davis* (1984) 161 Cal.App.3d 796, 802-803 [207 Cal.Rptr. 846].) To exercise the power of judicial discretion, all material facts and evidence must be both known and considered, together with legal principles essential to an informed, intelligent and just decision. (*People v. Davis, supra*, 161 Cal.App.3d at p. 804.) A court which is unaware of the scope of its

---

[3]Appellant has not raised Mr. Roberts's conduct in this matter as a basis for ineffective assistance of counsel, and we will not address that issue.

discretionary powers can no more exercise informed discretion than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record. (*People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [193 Cal.Rptr. 882, 667 P.2d 686].)

While appellant might not have stated sufficient reasons that would have supported a *Marsden* motion, the trial court was obliged to rely on different factors in exercising its discretion as to appellant's loss of confidence in his privately retained counsel. The court clearly believed that appellant wanted to discharge his attorney and conducted the *Marsden* hearing. Given the court's misunderstanding of the nature of appellant's motion, we cannot say the court properly exercised its discretion in its treatment of appellant's attempt to discharge his retained counsel. Appellant's conviction must be reversed. For such reason, we find it unnecessary to address appellant's remaining issues, which involve matters arising out of the trial and sentencing.

### DISPOSITION

The judgment is reversed.

Thaxter, Acting P. J., and Buckley, J., concurred.