Filed 7/12/21  R.I. v. Superior Court CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| R.I.,<br><br>        Petitioner;<br><br>        v.<br><br>SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>        Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT CHILDREN AND FAMILY SERVICES et. al.,<br><br>        Real Parties in Interest. | B309756<br><br>Los Angeles County Super. Ct. No. 18CCJP03928 |

ORIGINAL PROCEEDINGS IN MANDATE; petition for extraordinary writ. Martha A. Matthews, Judge. Petition denied.

Los Angeles Dependency Lawyers; Law Office of Thomas Hayes, Dominika Campbell and Charlie Chin for Petitioner.

Law Office of Amir Pichvai and Amir Pichvai for Real Party in Interest Los Angeles County Department of Children and Family Services.

Children's Law Center, CLCLA2 and Stacey Hendrix for Real Parties in Interest R.I., Jr., I.I., and B.I.

No appearance for Respondent.

## INTRODUCTION

In his petition for extraordinary writ, petitioner R.I. (father) argues the juvenile court erred by: (1) denying his request for a continuance of the twelve-month status review hearing concerning his three sons, R.I., Jr., I.I. and B.I., to hold a hearing under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*); and (2) terminating his reunification services and setting a permanency planning hearing for each of his children under Welfare and Institutions Code[1] section 366.26. As discussed below, we disagree with his contentions and deny the petition.

## BACKGROUND

Father and A.N. (mother)[2] have three children together: R.I., Jr. (R.I.), I.I., and B.I. When this case was initiated in May 2018, R.I. was six years old, I.I. was five years old, and B.I. was two months old.

In May 2018, the Department of Children and Family Services (Department) received a referral alleging the children were being neglected by their parents. The reporting party stated she had heard from her neighbors that the family was homeless and sleeping in their car. They had parked the car in front of her apartment building for the last 10 months to one year. She related "'the family spends all day parked in the parking lot of her building[,]'" both parents "'drink and smoke marijuana daily while caring for the children[,]'" and the "'parents do not tend to the children.'"

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Mother is not a party to the petition.

In August or September 2018, father was arrested and charged with stealing a vehicle. Father denied the allegations leading to his arrest.

In September 2018, the juvenile court sustained an amended petition filed under section 300, subdivision (b)(1) by the Department on the children's behalf, and as to which the parents had pled no contest. In so doing, the juvenile court found true the Department's allegations that the children were at risk of harm due to the parents' marijuana use, "which renders [them] incapable of providing the children with regular care and supervision[,]" and their "failure . . . to seek out appropriate medical and educational related services for the children[.]" The children were released to their parents under Department supervision. Father's court-ordered case plan required him to participate in weekly drug testing when released from custody, parenting classes, family preservation services, and individual counseling.

During the first six-month review period, father did not participate in court-ordered services while in custody, as educational programs were not available to him. He was released from custody on bond on December 25, 2018, and informed the Department of his release on January 9, 2019. A little over a week later, a Department social worker gave father a copy of his court-ordered case plan, reviewed the plan with him, and provided him with referrals for all required services. He was given another copy of his case plan and further referrals on February 7, 2019. On February 15, 2019, he enrolled in a substance abuse treatment program. Four days later, however, his bond was revoked and father was reincarcerated.

At the six-month review hearing held under section 364 in March 2019, the juvenile court found continued jurisdiction was necessary and the parents' case plans remained necessary and appropriate. It therefore ordered the Department to provide further family maintenance services.

In June 2019, the Department filed a supplemental petition under section 387 on behalf of all three children, alleging their prior placement was ineffective for their protection. Specifically, the petition alleged the children were at risk of serious physical harm due to: (1) mother's failure to comply with her case plan and failure to ensure they received necessary medical, mental health, and Regional Center services; and (2) father's failure to comply with his case plan.

At the adjudication hearing on the supplemental petition held on July 16, 2019, the petition was amended by interlineation and, among other revisions, the allegations pertaining to father were stricken. The parents pled no contest to the amended petition, which the juvenile court sustained. The juvenile court removed all three children from father, who was granted reunification services. While the juvenile court removed R.I. and I.I. from mother, B.I. was returned to her care under Department supervision. Father's court-ordered case plan required him to participate in weekly drug testing upon his release from custody, a parenting class for special needs children, and individual counseling. Father was also granted monitored visitation, which was to be initiated when he was released from custody.

On July 23, 2019, father was sentenced to 16 years in state prison for second degree robbery. His anticipated release is sometime in 2031, which is when he will be eligible for parole. Father was originally housed in North Kern County State Prison

4

located in Delano. Sometime between October 2019 and January 2020, he was transferred to California State Prison, Sacramento located in Represa.

In October 2019, the Department filed a second supplemental petition under section 387 solely on B.I.'s behalf. The petition alleged B.I.'s previous disposition was ineffective for his protection, as mother continued to abuse marijuana, which "render[ed] [her] incapable of providing [him] with regular care and supervision[,]" and failed to submit to drug testing or enroll in a substance abuse treatment program as required by her court-ordered case plan. The petition further alleged that a week before it was filed, mother left B.I. with his maternal grandmother at her home without making proper arrangements for his care and supervision, and had yet to resume caring for him.

The second supplemental petition was adjudicated in January 2020. There, the juvenile court sustained the second supplemental petition as pled, removed B.I. from both parents, and ordered the Department to provide reunification services to both parents.

On the same date it addressed the second supplemental petition, the juvenile court also held the six-month review hearing pertaining to R.I. and I.I., as required under section 366.21, subdivision (e). It found continued jurisdiction was necessary, and that the parents had not made substantial progress in addressing the circumstances necessitating their two oldest children's placement in foster care. It granted the parents reunification services for an additional six months.

On September 21, 2020, the juvenile court held the twelve-month review hearing for R.I. and I.I. as required under section

366.21, subdivision (f), and the six-month review hearing for B.I., as required under section 366.21, subdivision (e).[3] At the beginning of the hearing, however, the court acknowledged the Department filed its status review report late. Father's counsel requested a continuance of 30-45 days in order to review the report with father and proceed accordingly. The juvenile court granted the request and continued the hearing to November 3, 2020.

At the November 3, 2020 twelve-month review hearing for all three children under section 366.21, subdivision (f), father's counsel asked for another continuance, as the notice of hearing was sent to an incorrect address for father. Given the Department's recommendation to terminate father's reunification services as to all three children, the court granted the request for a continuance and reset the hearing for December 18, 2020.

On December 18, 2020, the Department submitted a last minute information (LMI) to the court after father did not call in to the hearing by phone despite arrangements having been made to do so. In the LMI, the Department social worker noted she spoke to a counselor at father's correctional facility, who had frequent contact with him. The counselor related that when he spoke to father about the December 18, 2020 hearing on December 3, 2020, "father stated that he did not want to participate unless he was able to hire his own private attorney prior to the hearing taking place. He stated that he had a bad experience with his [c]ourt appointed attorney, and did not feel

---

3    The review hearings were initially set for July 20, 2020. In May 2020, however, the juvenile court continued the hearings to September 21, 2020 due to concerns over the COVID-19 pandemic and the state of emergency declared by the Governor.

comfortable proceeding with the attorney that had been assigned to him." The counselor reported that when he followed up with father about a week later, "father stated that he had not made any progress with hiring his own attorney, and still did not plan to participate in the hearing if he was not able to do so in time." Shortly thereafter, the counselor "confirmed father had refused to call in to participate in the hearing[.]"

Subsequently, at the December 18, 2020 hearing, father's counsel requested a third continuance on the grounds that: (1) father did not sign a written waiver of appearance for the hearing; and (2) the information in the LMI "might warrant a *Marsden* hearing," which required father to be present. The juvenile court denied the request and proceeded with the review hearing. Ultimately, after hearing argument, the court terminated family reunification services for both parents and set a permanency planning hearing under section 366.26 for all three children.

## DISCUSSION

### I.   Denial of Request for Continuance to Conduct *Marsden* Hearing

Pursuant to section 352, subdivision (a), the juvenile court "may continue any hearing . . . beyond the time limit within which the hearing is otherwise required to be held[.]" "Continuances shall be granted only upon a showing of good cause," and if it would not be "contrary to the interest of the minor." (§ 352, subd. (a)(1) & (2).) "We review the denial of a continuance for abuse of discretion. [Citation.]" (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 605.)

7

Father argues the juvenile court abused its discretion by denying his counsel's request to continue the December 18, 2020 hearing to hold a *Marsden* hearing, as both requirements of section 352, subdivision (a) were met in this case. Specifically, he contends: (1) his entitlement to a *Marsden* hearing constituted good cause for a continuance; and (2) granting a continuance would not have been contrary to the children's interest because "the path to permanency desired for the children by the Department was only in the beginning stages, as a search was still to be initiated to find an adoptive home."

As discussed below, we conclude father did not establish good cause for a continuance as required under section 352 because, on the record in this case, the juvenile court was not required to conduct a *Marsden* hearing. Consequently, we conclude the court did not abuse its discretion by declining to grant a continuance.

"The legal principles governing a *Marsden* motion are well settled. '"When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance. [Citation.] . . . ." [Citations.]' [Citations.]" (*People v. Lara* (2001) 86 Cal.App.4th 139, 150.) A *Marsden* hearing is only required, however, "when [the] defendant requests substitution of appointed counsel[,]" and "'when the defendant asserts directly or by implication that his counsel's performance has been so inadequate as to deny him his constitutional right to effective counsel.' [Citations.]" (*Id.* at pp. 150-151.) These principles have been applied in juvenile dependency proceedings. (See *In re V.V.* (2010) 188 Cal.App.4th

8

392, 398; see also *In re James S.* (1991) 227 Cal.App.3d 930, 935, fn. 13; *In re Z.N.* (2009) 181 Cal.App.4th 282, 289.)

Father contends the juvenile court was required to conduct a *Marsden* hearing based on the information in the Department's December 18, 2020 LMI. As noted above, the LMI stated that on December 3, 2020, father told a counselor at his correctional facility "that he did not want to participate [in the December 18, 2020 hearing] unless he was able to hire his own private attorney prior to the hearing taking place[,]" as "he had a bad experience with his [c]ourt appointed attorney, and did not feel comfortable proceeding with the attorney that had been assigned to him." A week later, father informed his counselor that "he had not made any progress with hiring his own attorney, and still did not plan to participate in the hearing if he was not able to do so in time."

Father's remarks to the counselor at his correctional facility were insufficient to trigger the juvenile court's duty to hold a *Marsden* hearing. While father vaguely referred to having a "bad experience" with his court-appointed attorney, he did not provide, and the record does not otherwise contain, any information suggesting his discomfort with his attorney stemmed from concerns about the adequacy or effectiveness of his appointed counsel's representation. Nor did father express any desire for the juvenile court to appoint new counsel to represent him. Instead, his comments to his counselor unequivocally demonstrated he desired to retain private counsel. Under these circumstances, we conclude father did not establish entitlement to a *Marsden* hearing. (See *People v. Lara, supra*, 86 Cal.App.4th at pp. 150-151.) Accordingly, father failed to demonstrate good cause for a continuance under section 352, and the trial court did not abuse its discretion by denying his request to continue the

9

December 18, 2020 hearing to hold a *Marsden* hearing.[4] (See *In re Giovanni F.*, *supra*, 184 Cal.App.4th at p. 604 [discerning "no error" where father's "request [for a continuance to hold a *Marsden* hearing] was based on [his] attempt to retain a new attorney, not on an assertion that his appointed counsel's performance was inadequate. [Citation.]"].) Father did not need a *Marsden* hearing to hire private counsel. He was always free to do so.

## II.    Provision of Reasonable Reunification Services

Father contends the juvenile court erred by terminating his reunification services and setting a permanency planning hearing under section 366.26. Specifically, he argues the record lacks substantial evidence to support the court's finding that the Department offered and/or provided him reasonable reunification services while he was incarcerated. In support, father asserts the Department did not make reasonable efforts to contact him throughout the reunification period.

When a parent has been granted reunification services, "[t]he [D]epartment must make a ""good faith effort"" to provide reasonable services responsive to the unique needs of each family. [Citations.]" (*Mark N. v. Superior Court* (1998) 60

---

4    Because we conclude the juvenile court did not abuse its discretion by denying the request for a continuance based on father's failure to show good cause as required under section 352, subdivision (a)(2), we need not consider his arguments regarding whether a continuance would have been against the children's interest under section 352, subdivision (a)(1), or whether the juvenile court's denial of the request was harmless.

Cal.App.4th 996, 1010 (*Mark N.*).) "The effort must be made to provide reasonable reunification services in spite of difficulties in doing so or the prospects of success. [Citations.]" (*Id.* at p. 1011.) In general, "[s]ervices will be found reasonable if the Department has 'identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult . . . .' [Citation.]" (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 972-973.) Where a parent is incarcerated during the reunification period, "the [D]epartment should, at a minimum, . . . contact[ ] the relevant institutions to determine whether there [is] any way to make services available to the [parent]. [Citations.]" (*Mark N., supra,* 60 Cal.App.4th at p. 1013.)

"The [juvenile] court's finding reasonable reunification services had been offered or provided to the [parent] is subject to review for substantial evidence. [Citations.] We must view the evidence in the light most favorable to the [D]epartment and indulge in all legitimate and reasonable inferences to uphold the order. [Citation.]" (*Mark N., supra,* 60 Cal.App.4th at p. 1010.) Under this standard, "[w]hen two or more inferences can reasonably be deduced from the facts, we are without power to substitute our own deductions for those of the trial court." (*In re Cheryl E.* (1984) 161 Cal.App.3d 587, 598.)

Father contends the Department's "sparse contact" with him and his place of incarceration "f[ell] short of a good faith effort" to maintain reasonable contact with him during the reunification period. In considering his argument, we are mindful that "[i]n almost all cases it will be true that more services could

11

have been provided more frequently and that the services provided were imperfect. The standard is not whether the services provided were the best that might be provided in an ideal world, but whether the services were reasonable under the circumstances." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 547.) As set forth below, the record reflects that under the circumstances in this case, the juvenile court could properly find the Department made reasonable efforts to provide father reunification services. Consequently, the challenged finding is supported by substantial evidence.

Father was incarcerated during the entire reunification period, which began on July 16, 2019. Initially, he was housed at North County Correctional Facility in Saugus. On July 23, 2019, however, father was sentenced to 16 years in state prison. So far as we can tell, for all but one week of the reunification period, father was housed in state prison facilities located outside of Los Angeles County. As noted above, between July and October 2019, he was housed at North Kern County State Prison. Sometime between October 2019 and January 2020, he was transferred to California State Prison, Sacramento.

The Department social worker assigned to this case contacted father by letter on September 26 and October 25, 2019. The record does not reflect father responded to either of these letters. Subsequently, on December 17 and December 23, 2019, the social worker contacted the Education Based Incentives program to gather information regarding whether father was participating in services while he was incarcerated. The social worker, however, did not receive any responses to her inquiries.

On February 2, 2020 and May 6, 2020, the social worker again contacted father by letter at his place of incarceration.

Once more, the record does not indicate father responded to either letter. Then, on June 18, June 24, and June 30, 2020, the social worker contacted the Education Based Incentives program to ascertain whether father was participating in services while incarcerated. Once more, the social worker did not receive any responses to her inquiries.

In August 2020, the children's maternal grandmother informed the Department that father had been having positive phone visits with the children on the weekends for the last four to five months. Toward the end of July 2020, however, she reported she began "having issues with father speaking negatively about . . . her and mother to the children[,]" and told him to stop calling "if he could not stop bad mouthing them." In response, the Department stated it would "attempt to set up calls between father" and the children through his older sons' foster mother to facilitate further phone visits.

On December 2, 2020, the social worker scheduled a phone interview to speak with father to discuss his progress in participating in services while incarcerated. Father, however, refused to take the phone call. Shortly thereafter, the social worker contacted father's counselor at the correctional facility to inquire about his progress in services. The counselor responded that he was unable to disclose the information requested, as he did not have father's consent to do so. Moreover, on several other occasions in December 2020, the social worker contacted the staff at father's correctional facility to ensure they had the arrangements in place for father to appear telephonically at the December 18, 2020 hearing, and to confirm whether he intended to participate.

13

On this record, and considering the circumstances presented in this case, we conclude the juvenile court could reasonably find the Department made reasonable efforts to contact father and his place of incarceration to ascertain whether services were available to him. The juvenile court could also properly find the Department offered reasonable reunification services by taking steps to facilitate phone visits through the older children's foster mother after their maternal grandmother no longer wanted to monitor the visits, and by ensuring father could appear telephonically at the December 18, 2020 hearing. Accordingly, the record contains substantial evidence to support the court's finding that the Department offered reasonable reunification services to father and made reasonable efforts to maintain contact with him during the reunification period.

**DISPOSITION**

The petition for extraordinary writ is denied. The temporary stay of the section 366.26 hearing is vacated.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.

We concur:


MANELLA, P.J.


WILLHITE, J.