Filed 9/23/21  P. v. Marugg CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076618 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD160771) |
| KIM MARUGG, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Laura H. Parsky, Judge.  Affirmed.

Aurora E. Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Arlene A. Sevidal, Deputy Attorneys General, for Plaintiff and Respondent.

In 2003, appellant Kim Marugg (Appellant) pled guilty to one count of conspiracy to misrepresent a fact in violation of Penal Code section 182,

subdivision (a)(1).[1]  She appeals from an order of the trial court denying (1) her motion to vacate this conviction based on what she contended was newly discovered evidence of actual innocence (§ 1473.7, subd. (a)(2) (§ 1473.7(a)(2))[2]); and (2) her motion for a finding of factual innocence (§ 851.8, subd. (d)[3]).

This is the second time this case is before us.  In an August 2018 opinion, this court affirmed the trial court's denial of Appellant's petition for writ of error *coram nobis* (in which Appellant sought to withdraw her guilty plea and to dismiss the charges), reversed the denial of Appellant's motion to vacate the conviction under section 1473.7(a)(2), and remanded with directions for the trial court to hold a hearing on Appellant's motion and to

---

[1]  Subsequent unidentified statutory references are to the Penal Code.

[2]  Section 1473.7(a)(2) provides:  "(a) A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for any of the following reasons:  [¶] . . . [¶] (2) Newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice."

[3]  Section 851.8, subdivision (d) provides:  "In any case where a person has been arrested and an accusatory pleading has been filed, but where no conviction has occurred, the court may, with the concurrence of the prosecuting attorney, grant the relief provided in subdivision (b) at the time of the dismissal of the accusatory pleading."  The principal relief provided in subdivision (b) includes a finding of "factual[ ] innocen[ce] of the charges for which the arrest was made" and an order to various law enforcement agencies to seal and destroy their records of the arrest and the court order. (§ 851.8, subd. (b).)

specify the basis of its ruling. (*People v. Marugg* (Aug. 27, 2018, D072065) [nonpub. opn.] (*Marugg I*).[4])

In the present appeal, Appellant suggests that, at the hearing directed by this court in *Marugg I, supra,* D072065, the trial court "prioritized form over substance and efficiency over truth." More specifically, Appellant argues the court erred in issuing two sets of rulings.

First, Appellant focuses on what she describes as two "blanket, exclusionary rulings" which, according to Appellant, barred two entire categories of evidence. With regard to actual innocence, Appellant argues that she was prejudiced by the court's refusal to allow evidence of her trial attorney's ineffectiveness at and after the time of the 2003 conviction. With regard to whether the evidence was newly discovered, Appellant argues that she was prejudiced by the court's refusal to allow any evidence that was in existence at the time of her plea (Dec. 2003), including evidence derived therefrom. As we explain, based on the record before the court and the offers

---

[4]     On our own motion, we take judicial notice of *Marugg I, supra,* D072065 (Evid. Code, §§ 459, subd. (a), 452, subd. (a)) and adopt without citation to *Marugg I* much of the factual and procedural presentation.

In May 2020, Appellant moved to augment the record on appeal to include the respondent's brief in *Marugg I, supra,* D072065. We deemed the motion to be a request for judicial notice of the brief and deferred ruling. Appellant has neither established the relevance of this document (*People v. Franklin* (2016) 63 Cal.4th 261, 280 [judicial notice denied where appellant does not establish relevance of appellate brief from a different appeal] nor explained why we should consider a document that was not presented to the superior court in connection with the section 1473.7 hearing (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [absent extraordinary circumstances, an appellate court " 'will consider only matters which were part of the record at the time the [order on appeal] was entered' "]). Accordingly, Appellant's request for judicial notice of the respondent's brief in *Marugg I, supra,* D072065 is denied.

of proof by Appellant, the court did not abuse its discretion (or otherwise err) in the evidentiary rulings challenged on appeal.

Second, Appellant directs our attention to rulings of the court after commencement of the proceedings in response to Appellant's multiple requests to substitute counsel and to continue the proceedings. She argues that, in denying her initial request to substitute counsel—on the condition that the hearing be continued for new counsel to prepare—and her multiple requests for a continuance during the hearing, the court unlawfully infringed on her right to counsel of choice and deprived her of the right to effective assistance of counsel in the hearing that resulted in the order on appeal. Appellant made these requests after more than eight months of proceedings following remand and after the first day of the hearing in which the court had issued several significant substantive rulings adverse to Appellant. As we explain, given the timing of these requests and the history of these proceedings, the court did not abuse its discretion in making the rulings Appellant challenges on appeal.

Accordingly, we affirm the order denying Appellant's motions to vacate her conviction under section 1473.7(a)(2), and for a finding of factual innocence under section 851.8, subdivision (d) (the Order).

## I. FACTUAL AND PROCEDURAL BACKGROUND[5]

In June 2002, at a time when Appellant and Jose Luis Alvarez were married, they and several others were charged by indictment with 24 counts:

---

[5] Based on the briefing, the parties are familiar with the details of the 17 years between the issuance of the June 2002 indictment and the September 2019 Order. Thus, in this part of the opinion, we will set forth only the general background. For each issue in the Discussion, *post*, we will provide additional facts necessary for an understanding and resolution of the issue.

4

three counts of conspiracy to commit misrepresentation of a fact (§ 182, subd. (a)(1); counts 1, 10, and 16); 15 counts of misrepresentation of a fact (Ins. Code, § 11880, subd. (a); counts 2-9, 11-15, 23-24); one count of conspiracy to fail to file a tax return in a timely manner (§ 182, subd. (a)(1); count 20); and five counts of failure to file a tax return in a timely manner (Unemp. Ins. Code, § 2117.5; counts 17-19, 21-22). The indictment further alleged that, in the commission of counts 1, 10, 16, and 20, the loss exceeded $150,000 (§ 12022.6, subd. (a)(2)). These charges all related to J. Alvarez Construction, which Appellant testified was "the community property business" that she and Alvarez "built" during their marriage.[6]

Appellant and Alvarez separated in February 2003.

More than a year and a half after issuance of the indictment, in December 2003, Appellant and Alvarez each pled guilty to count 1— conspiracy to misrepresent a fact material to the determination of the cost of workers' compensation insurance issued or administered by the State Compensation Insurance Fund (SCIF) for the purpose of reducing the cost of the insurance (§ 182, subd. (a)(1); Ins. Code, § 11880, subd. (a)).[7] Appellant

---

[6] In addition, during 2001, Appellant worked at the offices of Alvarez Construction; and in January 2004, Appellant testified that "[t]he gross receipts for [Alvarez Construction] were almost $12 million dollars during the year 2002" and "2003 was also a very good year."

[7] Count 1 of the June 2002 indictment charged as follows:
"On or about February 1, 2000, [codefendant 1, Alvarez, Appellant, and codefendant 2] did unlawfully conspire together and with another person and persons whose identity is unknown to commit the crime of Misrepresentation Of A Fact, [Insurance Code section ]11880[, subdivision ](a), in violation of Penal Code section 182[, subdivision ](a)(1).
"The object of the conspiracy, [codefendant 1, Alvarez, Appellant and codefendant 1] agreed that Alvarez would pay [codefendant 1] an amount

5

pled to a misdemeanor, Alvarez pled to a felony, and at the request of the prosecutor the court dismissed the remaining 23 counts against each.

In *Marugg I, supra*, D072065, we summarized the conspiracy to which Appellant pled as follows:

> "Alvarez Construction had employees; as a result, Alvarez Construction owed both wages to its employees and premiums for related workers' compensation insurance; with regard to the majority of Alvarez Construction employees, rather than pay these wages and premiums, *in 2000*, Alvarez or [Appellant] wrote checks to codefendant 1, who purported to act as a subcontractor responsible for Alvarez's payroll; codefendant 1 would negotiate the checks, obtain cash, and pay these Alvarez

_____

that would allow [codefendant 8] to pay Alvarez's employees cash wages and, at the same time, [codefendant 1] would make a profit on thos[e] wages for paying Alvarez's employees in cash; thereby allowing Alvarez to save money by filing false reports with State Compensation Insurance Fund indicating Alvarez had no payroll.  This was done for the purpose of unlawfully reducing the amount of Alvarez's Workers' Compensation Insurance premium.

"Thereafter, in the County of San Diego, State of California, pursuant to the above conspiracy and in furtherance of the objects thereof:

"Overt Act No. (01):  On or about February 1, 2000, [Appellant or Alvarez] wrote bank checks for the amount of Alvarez's payroll being handled by [codefendant 1].

"Overt Act No. (02):  The above checks were provided to [codefendant 1] or [codefendant 8] by [Appellant] or [Alvarez].

"Overt Act No. (03):  [Codefendant 1] would cash the checks, obtaining cash money.

"Overt Act No. (04):  [Codefendant 1] would pay Alvarez's employees cash wages.

"And it is further alleged that in the commission and attempted commission of the above offense, the said defendants, [codefendant 1, Alvarez, Appellant, and codefendant 8] did take, damage and destroy property, with the intent to cause such taking, damage and destruction, and the loss exceeds one hundred fifty thousand dollars ($150,000), within the meaning of Penal Code section 12022.6[, subdivision ](a)(2)."  (Some capitalization omitted.)

6

Construction employees in cash; by not including the cash
wages paid to its employees through codefendant 1, Alvarez
Construction would underreport its true payroll to SCIF,
which administered workers' compensation insurance;
by underreporting its payroll, Alvarez Construction was
underpaying workers' compensation insurance premiums
for its employees; and by underpaying insurance premiums,
Alvarez Construction's overhead was lower, which allowed
Alvarez Construction to be more competitive for bids on
jobs, while increasing profits."

Appellant testified that the factual bases of her plea were contained in the transcript from the grand jury proceedings that resulted in the indictment and in discovery later provided by Respondent.

Immediately following Appellant's December 2003 change of plea, the court sentenced Appellant as follows: One day in custody, three years' probation, payment of certain fines, and "joint[ ] and several[ ] responsibil[ity] for restitution . . . which is to be paid by the defendant's husband, co-defendant Jose Alvarez."

Three years later, in January 2007, Appellant filed a petition for expungement of the conviction, citing section 1203.4a. Upon the required showing, section 1203.4a allows a defendant to withdraw a guilty plea and the court to dismiss the accusatory pleading. Although the matter was set for hearing, Appellant did not pursue it.

In September 2012, Appellant wrote a letter to the district attorney, asking that the People (Respondent) stipulate to allow her to withdraw her plea. The letter set forth a lengthy factual basis in support of the request and included a copy of the 2002 grand jury transcript. The next month, Respondent declined Appellant's request.

More than 12 years after entry of the judgment against her, in July 2016 Appellant filed a petition for writ of error *coram nobis*, seeking to

7

withdraw her guilty plea and to dismiss the charges.[8] In support of the petition, Appellant included a statement of facts, a memorandum of points and authorities, and evidence, including a declaration from Appellant and numerous exhibits regarding the underlying facts. She summarized her position as follows: "Due to a series of improper forces beyond [Appellant's] control, she was led to plead guilty to an offense she did not commit." Appellant further explained that, "due to the complexity of the issues, including an analysis by a forensic accountant, which was not complete until approximately [early 2016]," she "has only recently become aware of the full extent of the facts showing a deprivation of her rights to due process and effective counsel."

At the end of 2016, Appellant filed a "supplement" to her petition, by which she moved for two orders: (1) to vacate her conviction pursuant to section 1473.7(a)(2); and (2) to find her factually innocent of the charge pursuant to section 851.8, subdivision (d).[9] (See fns. 2, 3, *ante*.) In this supplement, Appellant explained that she "began to uncover evidence revealing her innocence *in 2011*," but that "the resulting investigation" was

---

[8] In one section of the petition, Appellant also sought postconviction relief under section 1473.6, which allows for a judgment to be vacated where the defendant is no longer unlawfully imprisoned or restrained and there is a sufficient showing of newly discovered evidence of fraud, false testimony, or specified misconduct by "a government official" in the criminal proceedings that resulted in the defendant's conviction. (§ 1473.6, subd. (a).) There are no issues on appeal related to this claim.

[9] Appellant acknowledged that her "situation does not immediately fall under [section 851.8,] subdivision (d) because a conviction still exists," contending instead that, if the court grants her section 1473.7 motion, then "the conviction will no longer exist."

not completed until *July 2016* "due to the complexity of the issues." (Italics added.)

The parties submitted numerous rounds of briefs, declarations, and exhibits. After considering the evidence and arguments, the trial court denied both the petition for writ of error *coram nobis* and the section 1473.7 motion to vacate the conviction. Appellant brought and the trial court denied a motion for reconsideration. Appellant appealed. In *Marugg I, supra*, D072065, this court affirmed the denial of the petition,[10] reversed the denial of the section 1473.7 motion, and remanded with directions for the court to hold a hearing on Appellant's section 1473.7 motion and to specify the basis for its ruling as required by former subdivisions (d) and (e)(2) of section 1473.7.

Jurisdiction for the remanded proceedings—i.e., the hearing on Appellant's section 1473.7 motion—vested in the trial court in October 2018. Between January 2019 and mid-August 2019, there were at least seven status conferences. The hearing on remand consisted of three court days of motions in late August 2019 and two court days of evidence, oral argument, and the court's ruling in mid-September 2019.

During the three days of motions, the court entered the two rulings that are Appellant's principal focus in this appeal. The court ruled that, for

---

10    In *Marugg I, supra*, D072065, we concluded the trial court did not err in ruling that Appellant failed to show that, in the exercise of due diligence, Appellant could not have discovered the facts on which she relied substantially earlier than the filing of her July 2016 petition. (See *People v. Kim* (2009) 45 Cal.4th 1078, 1093 [*coram nobis* petitioner " ' "must show that the facts upon which he relies were not known to him and could not in the exercise of due diligence have been discovered by him at any time substantially earlier than the time of his motion for the writ" ' "].)

9

purposes of presenting newly discovered evidence of her actual innocence, Appellant's claims of ineffective assistance of counsel at the time of her plea in 2003 would not be admissible "*unless and until*" either Respondent argues or the court otherwise considers Appellant's change of plea as evidence that Appellant was not innocent of the crime for which she was convicted. (Italics added.) The court also ruled that, subject to Appellant's proffers of specific items of evidence, to be "newly discovered" for purposes of section 1473.7(a)(2), "the evidence needs to be something that was not discovered or could not reasonably have been discovered with due diligence prior to the entry of judgment . . . [on] December[ 8,] 2003."

During the second day of argument on the motions, and again on the morning of the first day of presentation of evidence a few weeks later, Appellant moved to substitute counsel—i.e., to replace retained attorney James Byrnes with retained attorney Saman Nasseri[11]—and, on that basis, to continue the hearing. The court's rulings on these requests form the bases of Appellant's secondary focus in the appeal. On both occasions, the court denied the request to continue the hearing. At the August hearing (motions), the court denied Appellant's motion to substitute Nasseri for Byrnes, but allowed Nasseri to assist Byrnes. At the September hearing (evidence), the court found "no good cause" to continue the hearing, expressly declining to relieve Byrnes, but allowing Appellant to discharge Byrnes if that was her choice.

---

[11] In the post-conviction proceedings, Byrnes had represented Appellant since at least July 2016, when he filed and prosecuted the petition for writ of error *coram nobis*, through the August 2019 section 1473.7(a)(2) proceedings on remand. Nasseri was "not prepared to proceed" when Appellant first requested the substitution, having been retained only two days earlier.

During the September hearings at which the court considered evidence, the court heard testimony from two witnesses, admitted into evidence four exhibits, and took judicial notice of six documents. Following the argument of counsel and a recess, the court ruled from the bench. The court denied Appellant's section 1473.7 motion to vacate the conviction and Appellant's section 851.8, subdivision (d) motion for a finding of factual innocence.[12]

## II. DISCUSSION

Appellant presents what she describes as two "set[s] of errors" that require a reversal of the Order. In the first set, Appellant argues that the trial court erred "by categorically excluding: (1) all evidence of ineffective assistance of trial counsel [in the criminal proceedings that resulted in Appellant's conviction]; and (2) any and all evidence pointing towards [Appellant's] innocence pre-dating December 2003 [when Appellant pled guilty], along with any evidence derivative therefrom, including evidence explaining why [Appellant] pled guilty despite her innocence." In the second set of claimed errors, Appellant argues that the trial court erred in its "rulings in response to her request to substitute retained, post-conviction counsel, including the . . . denial of [her] initial request for a full substitution of counsel and her multiple requests for a continuance for new counsel to prepare."

---

[12] The court stated the basis for its ruling as required by former subdivisions (d) and (e)(2) of section 1473.7 (and this court's remand in *Marugg I*, *supra*, D072065). Because Appellant's arguments on appeal are limited to evidentiary rulings during the motion proceedings and rulings related to substituting counsel and continuing the hearing, there is no need to set forth the court's detailed findings and conclusions at the close of the hearing.

11

As we explain, Appellant did not meet her burden of establishing that the trial court abused its discretion in excluding specified evidence at the section 1473.7(a)(2) hearing or in denying Appellant's requests during the proceedings to substitute new counsel and to continue the hearing. As we further explain, Appellant did not establish an entitlement to relief based on what she contends was ineffective assistance of her trial attorney during the section 1473.7(a)(2) hearing. Accordingly, Appellant did not meet her burden of establishing reversible error, and we will affirm the Order.

A.  *Law*

Section 1473.7(a)(2) provides in pertinent part that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction" on the basis that "[n]ewly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice." (See fn. 2, *ante*.) A motion based on newly discovered evidence must be filed "without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief under this section." (§ 1473.7, subd. (c).) For purposes of section 1473.7(a)(2), "newly discovered evidence" means "testimony, writings and similar things described in Evidence Code section 140 (which defines 'evidence'), *discovered after trial or judgment, and that with reasonable diligence could not have been discovered earlier*." (*People v. Perez* (2020) 47 Cal.App.5th 994, 999, citing §§ 1181, subd. 8, 1473, subd. (c)(3)(B), 1473.6, subd. (b); Evid. Code, § 140.) The defendant has the burden of establishing, by a preponderance of the evidence, the grounds for relief under section 1473.7(a)(2). (§ 1473.7, subd. (e)(1); *Perez*, at p. 997.)

The parties disagree as to the standard of review to be applied on appeal.[13] Appellant argues that, under *Vivar*, *supra*, 11 Cal.5th 510, independent review applies to all issues. By contrast, Respondent argues that *Vivar* is inapplicable here, because it is limited to cases under section 1473.7, *subdivision (a)(1)*, and Appellant brought her motion under section 1473.7, *subdivision (a)(2)*.[14] Instead, Respondent contends that the issues in this appeal—which are limited to the admissibility of evidence, a substitution of counsel, and a continuance of the proceedings—should be reviewed for an abuse of discretion, as in any other appeal.

In *Vivar*, pursuant to section 1473.7, the defendant moved to vacate his conviction principally based on his claim that he would never have entered his plea had he understood that it would result in his deportation. (*Vivar*, *supra*, 11 Cal.5th at pp. 520-521.) The Supreme Court began with the assumption that the defendant's trial attorney had provided ineffective

---

[13] After the completion of briefing in April 2021, the Supreme Court issued its opinion in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), which discusses the standard that should be applied to appellate review of trial court rulings of prejudice under section 1473.7, subdivision (a)(1). (*Vivar*, at pp. 523-528.) We requested and received supplemental briefing regarding the potential application of *Vivar* to the issues in this appeal.

[14] Section 1473.7, *subdivision (a)(1)*, under which *Vivar, supra,* 11 Cal.5th 510, was decided, allows a person no longer in custody to seek to vacate a conviction upon a sufficient showing of "prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences." Section 1473.7*(a)(2)*, under which Appellant sought to vacate her conviction in this case, allows a person no longer in custody to seek to vacate a conviction upon a sufficient showing of "[n]ewly discovered evidence of actual innocence . . . that requires vacation of the conviction . . . as a matter of law or in the interests of justice."

13

assistance of counsel in failing to properly advise the defendant as to the immigration consequences of his plea. (*Id*. at p. 521.) The court then proceeded to clarify the standard for appellate review of prejudice findings for motions brought pursuant to section 1473.7, subdivision (a)(1)—holding that the independent standard of review applied.[15] (*Vivar*, at pp. 523-525.) Under this standard, " 'an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' " (*Id*. at p. 527.)

Contrary to Appellant's position, *Vivar, supra*, 11 Cal.5th 510, does not suggest that we independently review the rulings the trial court made during the hearing regarding admissibility of evidence, substitution of counsel, or continuation of the proceedings. *Vivar* is limited to the review of the lower court's determination of prejudice. Accordingly, we will discuss the applicable standard of review, *post*, as we analyze each issue.

On appeal, we presume the Order is proper, and Appellant bears the burden of establishing reversible error. (*People v. Tousant* (2021) 64 Cal.App.5th 804, 815, fn. 3.)

---

[15] The court reasoned that a standard of independent review was "most consistent with section 1473.7's purpose" of offering relief to those "who suffered 'prejudicial error' but are 'no longer imprisoned or restrained' and for that reason alone are unable to pursue relief on habeas corpus." (*Vivar, supra*, 11 Cal.5th at p. 525.) That said, while appellate courts must give "particular deference to factual findings based on the trial court's personal observations of witnesses," appellate courts need not give substantial weight to findings based on facts primarily presented from written evidence—as is often the case in section 1473.7 proceedings. (*Vivar*, at pp. 524, 527-528.) Under this standard, therefore, "it is for the appellate court to decide, *based on its independent judgment*, whether the facts establish prejudice under section 1473.7." (*Vivar*, at p. 528, italics added.)

B.   *Analysis*

  1.   *Ineffective Assistance of Counsel in the Underlying Criminal Case; Evidence in Existence as of December 2003*

For purposes of analyzing whether she presented newly discovered evidence of actual innocence as required by section 1473.7(a)(2), Appellant argues that her attempt to establish the ineffective assistance of her trial attorney at the time of her December 2003 guilty plea, Gustav Bujkovsky, was relevant to establishing "why [Appellant] had not uncovered the evidence of her innocence . . . and/or why she did not immediately appeal her case based on this evidence."  Appellant argues that, as a result of the trial court's "blanket" or "categorical[ ]" exclusion of evidence of her trial attorney's ineffectiveness at and after the time of her 2003 guilty plea, she suffered prejudice.  More generally, she contends that the court erred in its "blanket" or "categorical[ ]" exclusion of evidence that was in existence at the time of her guilty plea in 2003, including evidence derived therefrom.

  a.   *Bujkovsky's Ineffective Assistance*[16]

Appellant's principal argument on appeal is that the trial court erred in excluding evidence of what Appellant contends was ineffective assistance of counsel in the underlying criminal case.

  i.   *Additional Background*

In the underlying criminal proceedings, Bujkovsky represented Appellant when she pled guilty in December 2003.  In support of her

---

[16]   Respondent suggests that Appellant forfeited appellate review of the court's ruling regarding the admissibility of evidence of Bujkovsky's alleged ineffectiveness.  According to Respondent, because Appellant acknowledged that her contentions regarding Bujkovsky's ineffectiveness did not directly affect her guilt or innocence, Appellant forfeited appellate review of the issue.

section 1473.7(a)(2) claim of actual innocence, Appellant relied on what she contended was Bujkovsky's ineffective assistance in defense of the 2002 indictment that resulted in her 2003 guilty plea.

On appeal, Appellant relies on the allegations of her original section 1473.7(a)(2) motion, which she filed as a supplement to her 2016 petition for writ of error *coram nobis*. In her opening brief, she contends that her 2016 "original filing contained ample indications that: (1) Mr. Bujkovsky held a simultaneous and continuing, conflicting duty of loyalty and confidentiality to Alvarez Construction and/or Joe Alvarez, not only, at the time of the underlying proceedings, but also, in the years following, and (2) that this conflict actively interfered with his representation of [Appellant], by, for example, leading him to, first, *not* provide discovery to [Appellant] or explain to her the *lack* of evidence supporting her guilt, second, leading to his ultimate failure to object to the issuance of joint and several liability [for restitution] against her, despite the plea agreement to the contrary, and, finally, leading him to fail to help [Appellant] file an earlier challenge to the conviction." (*Sic*.)

In support of these claims, Appellant relies on the following evidence: the "original petition [for writ of error *coram nobis*] noting that Mr. Bujvovksy [*sic*] had hidden the evidence, including the lack thereof, from [Appellant], as he was working on behalf of Alvarez' Construction's interests, not [Appellant's]"; a 2005 declaration of Bujkovsky, in which he testified that that "he was the attorney for J. Alvarez Construction, Inc. 'on various matters,' beginning in March 2002 and continuing at least through June 2005"; "[Appellant's 2003] plea agreement promising restitution would not be

_____

We disagree. While Appellant's concession may be considered on appeal, it is not a basis on which to have forfeited appellate review.

16

derived from [Appellant's] portion of the community property"; Bujkovsky did not object when, as part of her sentence, the trial court "order[ed] joint and several restitution"; "Bujkovsky's 2005 declaration to collect over $150,000 in legal fees, for services rendered to Alvarez Construction between 2003 and 2005, against . . . community property"; a "2008 letter from [an identified attorney] asserting Mr. Bujkovsky was Joe Alvarez' personal attorney"; a "proffer [on behalf of Appellant at the section 1473.7(a)(2) hearing] that [a different, identified attorney] would establish that [Appellant] did not have access to Alvarez Construction's records during the relevant time period";[17] and a "[July 2011] order summarily disbarring Mr. Bujkovsky after being found to have committed a felony involving moral turpitude"—i.e., obstruction of justice in violation of title 18 United States Code section 1505. (*Sic*.)

In a brief Appellant submitted shortly before the remanded section 1473.7(a)(2) hearing, Appellant explained her reason for attempting to introduce evidence of Bujkovsky's ineffective assistance. In doing so, Appellant expressly acknowledged: "[T]he ineffectiveness of her [former] attorney, Gustav Bujkovsky, *does not directly determine whether* [*Appellant*] *was factually guilty or innocent*." (Italics added.) Nonetheless, with regard to admissibility of evidence of ineffective assistance, Appellant argued: "The State is expected to move to exclude any evidence of ineffective assistance of counsel leading up to the time of [Appellant's] guilty plea. . . . [C]onsideration of that ineffectiveness is *necessary to rebut one of the main contentions of the State—that* [*Appellant*] *would not have pled guilty if she*

_____

[17]    By the conclusion of the proffer, Appellant withdrew this attorney as a witness at the hearing.

17

*were innocent.* [¶] . . . [¶]  IAC stemming from Bujkovsky's representation of [Appellant] is therefore directly *relevant to the question of why she would enter a guilty plea*—which the State has made a central component of its argument against innocence." (Italics added.)

As Appellant anticipated, Respondent filed a motion to exclude evidence or argument of Bujkovsky's allegedly ineffective assistance.  During the first day of the section 1473.7(a)(2) hearing, based on the parties' briefing, the court explained its tentative thinking:  "[T]he only relevance of the ineffective assistance of counsel evidence would be to rebut an argument from Respondent that [Appellant] admitted to her guilt through her change of plea[;] . . . if the Court considers the change of plea as evidence of her guilt as opposed to her actual innocence, . . . [Appellant] would rebut that with evidence that the only reason she entered a change of plea was because of ineffective assistance of counsel.  If the Court were to exclude from its consideration the change of plea form and not consider that as evidence of guilt, then the ineffective assistance of counsel evidence would have no relevance."  Following the argument of counsel and consistent with the tentative, the court reserved ruling on Respondent's motion "unless and until evidence is introduced that [Appellant's] admission of guilt and change of plea are to be considered as evidence of guilt in the Court's evaluation."  The court confirmed this decision during the second day of the hearing.

On the fifth day of the hearing, after the close of Appellant's presentation of evidence, Respondent rested *without presenting any evidence.* During closing argument, Respondent did not mention Appellant's guilty plea or, for that matter, any evidence of Appellant's guilt.  Respondent's presentation was limited to responding to the evidence on which Appellant

18

had relied during closing and arguing why it did not establish "actual innocence" as required by section 1473.7(a)(2).

ii.     *Appellant Did Not Establish Reversible Error*

Appellant describes the ruling at issue as the trial court's "blanket, exclusionary ruling[ ], categorically barring all evidence of [Bujkovsky's] ineffectiveness[.]"  That is not an accurate description of the court's ruling.  Prior to the presentation of evidence, the court twice ruled that such evidence was not relevant "unless and until" Respondent or the court relied on Appellant's change of plea as evidence of guilt.  In fact, Respondent presented no evidence whatsoever; and in the court's detailed oral ruling from the bench, there is no mention of Appellant's change of plea (or any other evidence) as proof of Appellant's guilt.

We are thus presented with reviewing a decision of the trial court that sustained Respondent's relevance objection to evidence of Bujkovsky's allegedly ineffective assistance.  On appeal, Appellant argues that the proffered evidence of Bujkovsky's ineffective assistance was "highly relevant to establishing why [she] had not uncovered the evidence of her innocence (and the lack of evidence of her guilt) in existence at the time[.]"

We begin with the understanding that "all relevant evidence is admissible" (Evid. Code, § 351), and relevant evidence is evidence "having any tendency in reason to prove or disprove" a material fact in dispute (Evid. Code, § 210).  (E.g., *People v. Morrison* (2004) 34 Cal.4th 698, 724 (*Morrison*) ["evidence possessing any tendency in reason to prove or disprove any disputed material fact is relevant"].)  Although a trial court has "broad discretion" in determining the relevance of evidence, "it lacks discretion to admit evidence that is irrelevant[.]"  (*Ibid.*)  The proponent of the excluded evidence has the initial burden of establishing its relevance; and a trial court

19

properly excludes the evidence "when the proponent fails to make an adequate offer of proof regarding [its] relevance or admissibility[.]" (*Ibid*.) The trial court's exercise of discretion in admitting or excluding evidence is reviewed for abuse and will not be reversed " ' "except on a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*People v. Case* (2018) 5 Cal.5th 1, 46; see Cal. Const., art. VI, § 13; Evid. Code, § 354; Code Civ. Proc., § 475 [appealable order cannot be reversed without showing that, in the absence of the error, a different result would have been probable].)

Under both our state and federal constitutions, defendants charged with crimes and facing the potential for a deprivation of liberty are guaranteed "the right to the assistance of counsel unburdened by any conflicts of interest," which is a form of ineffective assistance of counsel. (*People v. Perez* (2018) 4 Cal.5th 421, 435; see *People v. Doolin* (2009) 45 Cal.4th 390, 417 (*Doolin*).) Where, as here, the defendant claims that counsel had a conflict of interest, "deficient performance is demonstrated by a showing that defense counsel labored under an actual conflict of interest *'that affected counsel's performance*—as opposed to a mere theoretical division of loyalties.' " (*Doolin*, at p. 417, quoting *Mickens v. Taylor* (2002) 535 U.S. 162, 171; accord, *Perez*, at p. 435.) Although there is a "presumption of prejudice to conflicts of interest arising from an attorney's concurrent representation of adverse clients," there nonetheless remains the "general requirement that a defendant demonstrate outcome-determinative prejudice from a violation of his state constitutional right to conflict-free counsel in order to obtain relief." (*Doolin*, at p. 420.)

Here, despite an opening brief in excess of 100 pages, Appellant does not set forth what she contends the legal standards are for establishing what

she describes as Bujkovsky's "conflicting duty of loyalty and confidentiality." At the end of a page-long string of citations to proffers of evidence in the record on appeal, Appellant includes the reference: "e.g.[,] *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284 [discussing the '*per se*' rule that attorneys are disqualified from simultaneously representing adverse interests]." Without more—and Appellant does not present more—Appellant necessarily failed to establish an actual conflict of interest. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "]; Cal. Rules of Court, rule 8.204(a)(1)(B).)

In any event, even if we assume that Bujkovsky had a conflict of interest—even one which, upon a sufficient showing would result in a prohibition of simultaneous representation, and thus a disqualification, without each client's informed written consent[18]—the result would be no different. In explaining how this conflict affected Bujkovsky's performance such that it resulted in outcome-determinative prejudice (see *Doolin, supra*, 45 Cal.4th at pp. 417, 420), Appellant tells us that, as a result of this conflict, Bujkovsky failed to provide discovery to Appellant, to discuss the evidence with Appellant, to object to the restitution order, and to help Appellant file an earlier challenge to the conviction. However, none of these alleged failures

---

[18] Former rule 3-310(C)(1) of the Rules of Professional Conduct, which was in effect at the time of Appellant's guilty plea in 2003, provided that, without each client's informed written consent, an attorney is precluded from accepting or continuing representation of more than one client in a matter in which the interests of the clients actually or potentially conflicted. (*Fiduciary Trust Internat. of California v. Superior Court* (2013) 218 Cal.App.4th 465, 487-488; see Rules of Professional Conduct, rule 1.7.)

tends in reason to establish Appellant's actual innocence, the disputed fact at issue under section 1473.7(a)(2). The elements of the crime of conspiracy—i.e., the crime to which Appellant pled guilty and, thus, the crime for which Appellant was required to establish actual innocence for purposes of her section 1473.7(a)(2) motion—are: (1) an agreement; (2) specific intent; (3) two or more persons; (4) an unlawful object or means; and (5) an overt act. (§§ 182, subd. (a)(1), 184; *People v. Swain* (1996) 12 Cal.4th 593, 600, fn. 1; see CALCRIM No. 415.) None of the proffered evidence as to Bujkovsky's performance defeats an element of this crime; and Appellant does not suggest a particular defense to this crime for which the proffered evidence might tend in reason to establish. Indeed, this conclusion is consistent with Appellant's concession in the trial court that Bujkovsky's "ineffectiveness . . . does not directly determine whether [Appellant] was factually guilty or innocent."

For the foregoing reasons, the trial court's order excluding evidence of Bujkovsky's allegedly ineffective assistance—absent Respondent's or the court's consideration of Appellant's plea as evidence of guilt—was neither arbitrary, capricious, nor patently absurd.[19] Such evidence had no tendency in reason to establish Appellant's actual innocence. Accordingly, Appellant did not meet her burden of establishing an abuse of discretion.[20]

> b. *Newly Discovered Evidence*

As an argument related to Bujkovsky's allegedly ineffective assistance at the time of Appellant's plea in 2003, Appellant contends that the court

---

[19] Contrary to Appellant's suggestion, *why* Appellant pled guilty is not evidence that tends in reason to prove actual innocence—not without a further proffer, in any event, and Appellant presented none.

[20] Having found no abuse of discretion, we do not reach Appellant's arguments regarding due process or cumulative error.

22

erred in excluding—as not "newly discovered" for purposes of section 1473.7(a)(2)—evidence in existence at the time of her plea, as well as evidence derived therefrom.

During the first day of the section 1473.7(a)(2) hearing, when considering what evidence might be admissible as "newly discovered" for purposes of section 1473.7(a)(2), the court first ruled that "at the very least the evidence needs to be something that was not discovered or could not reasonably have been discovered with due diligence prior to the entry of judgment . . . [on] December[ 8,] 2003." The court nonetheless told the parties this was not a final decision. Depending on the evidence being proffered, the court would consider a later cutoff date.

Consistent with her burden in the trial court (§ 1473.7, subd. (e)(1); *Perez*, *supra*, 47 Cal.App.5th at p. 997), Appellant identified and proffered certain evidence that was otherwise subject to exclusion based on the court's tentative cutoff date of December 2003. According to Appellant, although the proffered evidence was in existence (or derived from evidence in existence) at the time of the underlying judgment, it was nonetheless "newly discovered" for purposes of section 1473.7, subdivision (c). The court considered the proffers and the positions of the parties as to at least *23 items* before ruling on the admissibility of each, only some of which involved the issue of whether the evidence was newly discovered.[21]

---

[21] The court also left open the possibility that, during the evidentiary portion of the proceedings, Appellant could present additional evidence, so long as she was able "to show how it's newly discovered with due diligence." For these reasons, Appellant's characterization of the court's ruling as a "blanket" or "categorical[ ]" exclusion of all evidence in existence as of the date of the judgment is once again neither accurate nor fair.

Initially, Appellant contends the trial court's rulings were premised on the "flawed inference" that just because the proffered evidence was in existence, Appellant "had access to this information." More specifically, she argues that, because Bujkovsky's assistance was ineffective, the court erred in assuming she had access to the evidence. We disagree with Appellant's contention that the court's "inference" was erroneous. Section 1473.7, subdivision (c) does not require that the section 1473.7 motion be filed without undue delay from *actual* discovery of the new evidence. The statute requires only that the motion be filed without undue delay from the time when the defendant "could have discovered [the new evidence] *with the exercise of due diligence.*" (§ 1473.7, subd. (c), italics added.) Here, to the extent the court excluded any proffered evidence on the basis that it was in existence at the time of the December 2003 judgment, the court heard the positions of both parties—including Appellant's specific argument that, because of Bujkovsky's ineffective assistance, she did not have access to the evidence—and found that the evidence was "available" to Appellant. For purposes of section 1473.7, subdivision (c), this includes evidence "available" to Appellant *had she exercised due diligence.*

We now consider each of the five proffers that Appellant discusses on appeal.

First, Appellant refers us to proffered evidence from the grand jury proceedings in 2002. Here, the court ruled that the evidence presented to the grand jury was available to Appellant "no later than early July 2002." (Citing *Marugg I, supra*, D072065.) On appeal, Appellant relies on Bujkovsky's ineffective assistance as an excuse for the delayed discovery; but, as we have just concluded, the court did not err in ruling that Bujkovsky's allegedly ineffective assistance did not affect Appellant's responsibility to

24

demonstrate due diligence.[22]  In any event, the record discloses that, in fact, Appellant not only had a copy of the transcript of the grand jury proceedings as early as September 2012, but she even forwarded a copy to Respondent (asking that Respondent stipulate to allowing her to withdraw her plea).

Second, Appellant refers us to proffered expert evidence from a forensic accountant, Robert Taylor, whose testimony would have been based on the evidence presented to the grand jury.  According to Appellant, Taylor would testify that "nothing in the paperwork, upon which the grand jury testimony was based, pointed towards any unlawful scheme of which [Appellant] had knowledge."[23]  Initially, we observe that Appellant did not retain the forensic accountant until November 2015; this was more than three years after

---

[22]  In addition, in *Marugg I, supra*, D072065, we expressly noted that, in the 2017 proceedings underlying that appeal, "[Appellant] did not tell the trial court the date on which she became aware of what she now contends is biased or false grand jury testimony."  Nonetheless, in the remanded proceedings, when presented with the same issue, Appellant chose not to provide this information.

[23]  The court also excluded the proffered expert testimony on two additional grounds, neither of which Appellant challenges on appeal: (1) Taylor's opinions "do not go to actual innocence but rather to an accounting error that he claims [occurred] in the application of restitution payments"; and (2) Taylor, whose expertise was in the field of business valuations, was not qualified to give the opinions being offered regarding *fraud*.  In this latter regard, we note that Taylor's assumptions in support of his opinion included the understanding that Appellant pled guilty to two counts—including "one count of Insurance Code 11880(a)"—which is not correct.  Insurance Code section 11880 deals with the crime of workers' compensation insurance fraud; however, Appellant pled guilty only to *conspiracy* to commit insurance fraud.  The elements of the two crimes are considerably different; for purposes of Appellant's plea, conviction, and sentence, there is no requirement of evidence that Appellant committed fraud.  (Compare § 182, subd. (a)(1) with Ins. Code § 11880, subd. (a).)

25

Appellant had the grand jury testimony and 12 years after Appellant pled guilty. Furthermore, since the court did not err in ruling that Appellant failed to exercise due diligence in obtaining the evidence presented to the grand jury in 2002, the court did not err in excluding the accountant's opinions based on that evidence.

Third, Appellant refers us to proffered testimony from Kathy Bradley, described by Appellant as "the prosecution's auditor and grand jury witness" in 2002. According to Appellant, had the proffered evidence been admitted and credited, it would have impeached Bradley's grand jury testimony. Appellant misrepresents the record in arguing that the court excluded evidence from Bradley based on whether it was newly discovered. In fact, the court excluded this evidence on the basis that Appellant had not provided a sufficiently detailed proffer.

Fourth, Appellant refers us to proffered evidence from Gary Helson, described by Appellant as "the prosecution's investigator" of an internal investigation by the district attorney's office. Like the court's ruling as to Bradley, the court excluded evidence from Helson on the basis that the proffer did not include sufficient detail—*not* on the basis of when Appellant discovered the evidence she proffered.

Finally, Appellant refers us to proffered evidence from a specified attorney, Timothy Sullivan. According to the proffer, Sullivan was an attorney who represented Alvarez Construction and would testify as to "the role of [Appellant] in the business itself in that she did not have any corporate officer or other designations that would give her access to the information that was [the basis for the indictment]." Again Appellant misrepresents the record when she tells us that the court excluded this

evidence on the basis it was not newly discovered. In fact, Appellant withdrew Sullivan from her witness list during argument on the motions.

Incorporating the legal authorities regarding the standard of review of rulings regarding the admissibility of evidence discussed at part II.B.1.a.ii., *ante*, we have no difficulty concluding that the trial court did not err in ruling that the evidence from the grand jury proceedings in 2002 and from Taylor's testimony (based on the evidence from the grand jury proceedings) was not relevant.[24] Because this evidence has no tendency in reason to establish that Appellant had "newly discovered" evidence of actual innocence for purposes of her section 1473.7(a)(2) motion (including whether she exercised due diligence in discovering the evidence), Appellant did not meet her burden of establishing that the court's ruling was arbitrary, capricious, or patently absurd. Accordingly, Appellant did not meet her burden of establishing an abuse of discretion.[25]

2.   *Substitution of Counsel & Continuance of the Hearing*

Appellant next argues that the trial court erred in denying her initial request to substitute counsel during the hearing—on the condition that the hearing be continued for new counsel to prepare[26]—and her multiple

---

[24]   Likewise, although not argued by the parties, we have no difficulty concluding that, in excluding the evidence from Bradley, Helson, and Sullivan, the trial court did not err in ruling that Appellant failed to make an adequate offer of proof. (See *Morrison, supra*, 34 Cal.4th at p. 724 [trial court properly excludes evidence where proponent fails to make adequate offer of proof as to relevance].)

[25]   Again having found no abuse of discretion, we do not reach Appellant's arguments regarding due process or cumulative error.

[26]   At no time did Appellant ask that the court allow Nasseri to be substituted for Byrnes *without a continuance for Nasseri to prepare*.

requests for a continuance during the hearing. This error, according to Appellant, prejudiced her by infringing on her right to counsel of choice and depriving her of the right to effective assistance of counsel during the hearing.

a. *Additional Background*

Attorney Byrnes represented Appellant in 2016 and, on her behalf prepared, filed, and prosecuted both the petition for writ of *coram nobis* and the section 1473.7(a)(2) motion. Different counsel represented Appellant in her appeal from the denial of the petition and motion. (*Marugg I, supra*, D072065.) After jurisdiction returned to the superior court with directions to conduct the section 1473.7(a)(2) hearing at issue in this appeal, Byrnes again represented Appellant as of the first court appearance. Byrnes represented Appellant at all seven status conferences between January 2019 and June 2019. At the May 9 status conference, the court set August 19 as the date for motions for the section 1473.7(a)(2) hearing; at the June 28 status conference, the court confirmed August 19 as the date for hearing motions and set September 16 as the date for hearing evidence; and on August 19, the court continued the motions hearing until August 23 and confirmed the September 16 date for hearing evidence.

On the first day of motions, August 23, the court issued a number of rulings, including the two principal rulings Appellant challenges in this appeal, discussed at part II.B.1., *ante*. At the end of the first day, the court clearly and unmistakably told Byrnes that it would not allow further continuances for the purpose of further research or preparation.

At the beginning of the second day of motions, Appellant moved to substitute counsel. She asked to replace Byrnes with Attorney Nasseri *on the condition the court continue the section 1473.7(a)(2) hearing*. Nasseri

28

explained, "I am not prepared to proceed today"; "I was recently retained as of [two days ago,] and I have informed both Mr. Byrnes and [Appellant] that any substitution would be contingent on the Court allowing me time to prepare the case and being amenable to moving dates to allow me to prepare for the case." More specifically, Nasseri asked that the continued hearing on the motions be set for September 19 and that the evidentiary hearing be continued until a date between October 28 and November 12. The only comments from or representations regarding Byrnes were that the current proceedings were "the third difficult hearing" he had that week and that he lacked energy.

The court reminded counsel and the parties that they were "in the middle" of the section 1473.7(a)(2) hearing, "which is essentially our trial for purposes of the limited jurisdiction this Court has" pursuant to the remand in *Marugg I*, *supra*, D072065. The court further reminded counsel and the parties that they had had over three years to prepare since the filing of the section 1473.7(a)(2) motion in 2016 and over a year since the remand order in *Marugg I*, *supra*, D072065, in 2018.

Given the history of the section 1473.7(a)(2) proceedings and the timing of the motion—i.e., almost three years after the filing of the section 1473.7(a)(2) motion; a year after the opinion in *Marugg I*, *supra*, D072065; more than three months after the court set the date for hearing motions; and the day after adverse rulings on evidentiary motions—the court explained: "[T]he court may deny a defendant's motion to discharge retained counsel if discharge . . . would result in a disruption of the orderly processes of justice, unreasonable under the circumstances of the particular case." (Citing *People v. Ortiz* (1990) 51 Cal.3d 975 (*Ortiz*).) Given this standard, the court advised Nasseri (and Appellant) that it "has some concerns . . . as to

29

delay tactics and manipulation of the court."[27] After listening to argument, the court told Nasseri that it was "not asking for any privileged information in open court," instead offering him the opportunity "to have some sort of in camera hearing if there's some reason that you feel at this stage there's justification for the substitution of counsel *other than to delay the proceedings*." (Italics added.) The court also offered to allow Nasseri to associate in as co-counsel with Byrnes, "so that we would not have to delay the proceedings."

After taking a break to allow Appellant, Nasseri, and Byrnes to confer, Nasseri made no further offer of proof and—with Appellant's authorization—accepted the court's offer to allow him to associate in as co-counsel.

The court assumed without deciding that Appellant had a right to the assistance of retained counsel of choice. Then, after expressly "balancing [Appellant's] interest in counsel of choice against the disruption flowing from the substitution of counsel at this point," the court denied Appellant's request for a continuance of the proceedings and the absolute substitution of counsel. In support of its ruling, the court found as follows: "The Court is concerned that this motion is being brought essentially midway through the Court's adjudication of the merits of the [section 1473.7(a)(2) motion] in order to get a second bite at the apple, essentially, and to relitigate and reargue everything before the Court, *which is an improper purpose*; however, to the extent that [Appellant's] interest can still be satisfied through association of counsel without delaying the Court's proceedings, . . . the Court will allow Mr. Nasseri to be counsel of record, along with Mr. Byrnes." (Italics added.)

---

[27] In addition to the timing, Appellant gave Respondent no notice that she was bringing a motion to substitute counsel.

At the end of the second day (Aug. 27), Nasseri renewed his motion for a continuance. The court denied the request.

Weeks later, shortly after the beginning of the first day of the evidentiary portion of the section 1473.7(a)(2) hearing (Sept. 16), Appellant *personally* made an oral motion to substitute counsel. The court noted that it had already "essentially granted that motion at the previous hearing by allowing [Nasseri] to substitute in." Nasseri clarified that Appellant's request was for a continuance so that he could "do a diligent investigation and present the documents properly to the Court." After listening to the argument of counsel, the court deemed Appellant's request an oral motion for "yet another" continuance of the hearing and denied the motion, finding "no good cause." Nonetheless, the court expressly gave counsel the opportunities: (1) to present in camera privileged communications related to Byrnes's representation of Appellant, if necessary; and (2) to request additional time for research, upon a sufficient showing. Nasseri did neither.

b.　*Analysis*

In response to criminal charges, a nonindigent criminal defendant has due process and Sixth Amendment rights to retained counsel of the defendant's choice and may discharge retained counsel at any time with or without cause. (*People v. Verdugo* (2010) 50 Cal.4th 263, 310-311 (*Verdugo*); *People v. Lara* (2001) 86 Cal.App.4th 139, 152 (*Lara*).) That is because the right to counsel of choice includes not only the defendant's choice of new counsel, but also the defendant's decision to discharge previously retained counsel. (*Ortiz, supra*, 51 Cal.3d at p. 983.) Notably, "the Sixth Amendment applies only to 'criminal prosecutions,' " and a due process right to counsel applies only upon a showing of a statutory right to counsel or the potential for " 'a significant deprivation of liberty.' " (*Conservatorship of David L.* (2008)

31

164 Cal.App.4th 701, 710 (*David L.*); accord, *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 980 [" 'neither the federal nor the state Constitution mandates an unconditional right to counsel to pursue a collateral attack on a judgment of conviction' "].)  As we explain, a section 1473.7(a)(2) motion is neither a response to a criminal prosecution nor a proceeding that involves the potential for a deprivation of liberty; it is a motion by an out-of-custody convicted defendant who seeks to collaterally attack the conviction and ameliorate its effects.  Accordingly, a section 1473.7(a)(2) motion does not implicate a statutory right to counsel.

A section 1473.7(a)(2) motion is a statutory post-conviction procedure initiated by the defendant which, if successful, will result in the prior conviction being vacated.  Section 1473.7(a)(2) authorizes this relief only upon the defendant's showing, by a preponderance of the evidence, of newly discovered evidence of the defendant's actual innocence.  Significantly, Appellant presents no authority for her presumption that she has a due process or Sixth Amendment right to retained counsel of her choice in such a proceeding.

Appellant's reliance on *David L., supra*, 164 Cal.App.4th 701, is misplaced.  In *David L.*, the court concluded that a proposed conservatee has a right to counsel (and, thus, a right to effective assistance by counsel) *only* because the proposed conservatee has a statutory right to counsel under Welfare & Institutions Code section 5365.  (*David L.,* at p. 710 ["Section 5365 provides in pertinent part:  'The court shall appoint the public defender or other attorney for the . . . proposed conservatee within five days after the date of the petition.' "].)  By contrast, section 1473.7(a)(2) does not provide a

statutory right to counsel, Appellant does not suggest such authority, and our independent research has not disclosed any.[28]

Thus, we proceed with the understanding that, under the circumstances here, Appellant had no constitutional or statutory right to counsel at the section 1473.7(a)(2) hearing. She was not in custody, she was able to meet (and, in fact, met) with counsel of her choice, and she attended the hearing with—and was able to assist (and, in fact, assisted)—her counsel.[29]

We review the trial court's denial of a motion to relieve retained counsel for an abuse of discretion. (See *Verdugo, supra,* 50 Cal.4th at p. 311

---

[28] In *People v. Rodriguez* (2019) 38 Cal.App.5th 971, disapproved on a different ground in *Vivar, supra*, 11 Cal.5th at page 526, footnote 4, a noncitizen defendant moved to vacate his conviction under section 1473.7, subdivision (a)(1), on the basis that prejudicial error had affected his ability to understand the immigration consequences of his plea. (*Rodriguez*, at pp. 974-975.) There, the indigent defendant was in federal detention at the time of the section 1473.7 hearing, and no counsel had been appointed for him. (*Id.* at pp. 980-981.) Even though former section 1473.7 did not provide a statutory right to counsel, the trial court denied the defendant's right to have counsel present *because* the statute required a hearing and authorized the court to hold the hearing without the personal presence of the defendant " '*if counsel for the moving party is present.*' " (*Rodriguez*, at p. 980, quoting former § 1473.7, *subd. (d).*) Since the defendant was not personally present (and could not have attended, as he was in federal custody), the trial court had erred by proceeding with the required hearing without appointing counsel. (See *Rodriguez*, at pp. 980-984.) For the reasons we explain in the text, *post*, *Rodriguez* is distinguishable from the present case.

[29] Our ruling regarding the right to counsel in section 1473.7(a)(2) proceedings is limited to the facts of this case. We express no opinion as to the right of such counsel where, for example, the defendant cannot be present at the hearing (e.g., where the defendant is in custody on charges other than those at issue in the section 1473.7(a)(2) proceedings) and has been unable to meet with counsel. That is not the situation here.

[posttrial proceedings]; *Lara, supra*, 86 Cal.App.4th at pp. 153-154 [during trial].) We likewise review the trial court's denial of a continuance for an abuse of discretion. (*People v. Blake* (1980) 105 Cal.App.3d 619, 623-624 [motion to continue trial to retain new counsel].) Appellant has not shown an abuse here.

As we explained, *ante*, prior to Appellant's first request for a continuance (for which Appellant gave no notice to Respondent) on August 27, 2019:

- In December 2016, Appellant had filed her section 1473.7(a)(2) motion;[30]

- in March 2017, Appellant had already presented her evidence once (and the motion was denied);

- in October 2018, the matter had been remanded for purposes of a section 1473.7(a)(2) hearing and findings;

- during the January – May 2019 time period, the court had conducted seven status conferences;

- in May 2019, the court had set an August 19 date for presentation of motions;

- in June 2019, the court had set a September 16 date for presentation of evidence;

- in early August 2019, the court had continued until August 23 the date for presentation of motions; and,

---

[30] Well-prepared in 2016, Byrnes prepared and filed Appellant's section 1473.7(a)(2) motion prior to the effective date of section 1473.7. (Stats. 2016, ch. 739, § 1, eff. Jan. 1, 2017.)

34

- on August 23, 2019—the court day immediately preceding the day of Appellant's first request for a continuance—*the court had issued two adverse evidentiary rulings against Appellant.*

Despite this chronological background and the date of Appellant's conviction 16 years earlier, on the first day of the presentation of the evidence (Sept. 16), Appellant again requested a continuance in order for Nasseri to "do a diligent investigation."

Given these undisputed facts, the court reasonably and understandably found "concerns . . . as to delay tactics and manipulation of the court." Likewise, the court reasonably and understandably found that Appellant's motive was "to get a second bite at the apple, essentially, and to relitigate and reargue everything before the Court, which is an improper purpose." Such findings satisfy the requirement that Appellant's choice of retained counsel may be rejected where that choice results "in a 'disruption of the orderly processes of justice unreasonable under the circumstances of the particular case.'" (See *Ortiz, supra*, 51 Cal.3d at p. 982 [criminal trial]; accord, *Lara*, at p. 152 [same].)

Appellant does not convince us otherwise. Appellant contends that the court erred in denying her "initial request for a full substitution of counsel and her multiple requests for a continuance for new counsel to prepare," because Byrnes was "unwilling and/or unable to provide effective assistance." (Bolding and some capitalization omitted.)

Initially, we reject Appellant's contention that she was prejudiced by a ruling which precluded "a full substitution of counsel." At the time of the initial request, the court suggested that, instead of substituting Nasseri for Byrnes, Nasseri could associate with Byrnes; the court gave counsel an opportunity to discuss the suggestion with Appellant; and Nasseri reported

that Appellant did not object. Appellant's only other contention of prejudice is that, had she been allowed "a full substitution," a continuance would have been necessary; and this circuitous argument does not support a finding of prejudice.

We acknowledge that the court was often frustrated by Byrnes's requests to consult with Appellant before responding to questions or effecting proffers of evidence; however, at no time did the court preclude the consultations or otherwise preclude Byrnes from looking for items in response to the court's inquiries. In addition, in suggesting to the court that Byrnes was unprepared, Nasseri referred only generically to a lack of preparation to lay the necessary foundation of *unidentified* documents.[31] Finally, the court offered Nasseri two opportunities to explain in camera any potentially confidential information as to how or why Appellant might be prejudiced if she were not granted a "full substitution of counsel"; but Nasseri made no additional showing of prejudice.

In closing, Appellant argues that she is entitled to relief because the trial court's denial of the requests to substitute counsel and continue the proceedings were based on Byrnes's ineffective assistance. (Citing *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1548 [" 'Entitlement to a midtrial continuance requires the defendant "show he exercised due diligence in preparing for trial." ' "].) We disagree. Unlike *Gonzalez*, this was not a jury trial; and, as we explained *ante*, under the circumstances of this case,

---

[31] This suggestion was made at the time of the *second* request to substitute counsel, the denial of which Appellant does not challenge on appeal. At the time of the *initial* request, there was no mention of Byrnes's lack of preparation. To the contrary, at the time of the initial request, the principal focus was on the need for a continuance in order to allow Nasseri to be prepared.

Appellant had no constitutional or statutory right to retained counsel of her choice in the section 1473.7(a)(2) proceedings.[32] (See *David L., supra*, 164 Cal.App.4th at p. 710.)

### 3. *Denial of Section 851.8, Subdivision (d) Motion*

As we introduced at footnote 9, *ante*, Appellant acknowledges that, if she fails to obtain relief under section 1473.7(a)(2), then she is not entitled to a finding of factual innocence under section 851.8, subdivision (d). We agree and discuss the issue no further.

---

[32] On the fourth day of the section 1473.7(a)(2) hearing, although Appellant personally presented a written " 'Request for Leave to File Motion for Ineffective Assistance of Counsel, Motion for Ineffective Assistance of Counsel,' " she expressly withdrew it before the court filed it. Appellant then made the oral motion, discussed in the text, *ante*, that Nasseri represent her. However, as the court noted, Nasseri *was* representing her in court at that time. Subsequently, neither she nor Nasseri presented further argument regarding ineffective assistance of counsel, even though Nasseri again requested a continuance. Thus, contrary to her argument on appeal, Appellant did not raise the issue of ineffective assistance of post-conviction counsel in the trial court for purposes of preserving an issue on appeal. In any event, as we explained in the text, *ante*, because Appellant had no constitutional or statutory right to retained counsel of her choice in the section 1473.7(a)(2) proceedings, there is no legal basis for such a motion in the trial court.

We likewise reject Appellant's suggestion that, had we found Byrnes failed to provide effective assistance, Respondent would have had the burden on appeal to establish that Byrnes's ineffective assistance was harmless beyond a reasonable doubt. (Citing *People v. Hill* (2013) 219 Cal.App.4th 646, 652 and *Chapman v. California* (1967) 386 U.S. 18.) This is not an appeal from a judgment of conviction, in which the People proved the defendant's guilt beyond a reasonable doubt in the trial court. This is an appeal from the trial court's denial of a motion, in which the defendant (Appellant) failed to prove by a preponderance of the evidence the elements of her post-conviction collateral attack.

## III.  DISPOSITION

The September 17, 2019 order denying Appellant's motions under sections 1473.7 and 851.8 is affirmed.


IRION, J.

WE CONCUR:



HUFFMAN, Acting P. J.



AARON, J.